## THE SCHOONER HOPPET AND CARGO
### *v.*
## THE UNITED STATES.

1813.

Feb. 19th.

*Absent....*LIVINGSTON, *J. and* TODD, *J.*

THIS was an appeal from the sentence of the district *Court* for the district of Orleans, (exercising the jurisdiction of a Circuit Court of the United States,) condemning the schooner Hoppet and her cargo as forfeited to the United States under the act of congress of March 1, 1809, vol. 9, p. 243, entitled "An act to "interdict the commercial intercourse between the Uni-"ted States and Great Britain and France and their "dependencies, and for other purposes."

The 4th section of that act makes it unlawful "to "import into the United States or the territories there-"of, from any foreign port or place whatever, any "goods, wares or merchandize whatever, being of the "growth, produce or manufacture of France or of any of "her colonies or dependencies," or of any country in the possession of France.

By the 5th section it is enacted, "that whenever any "article or articles, the importation of which is prohibi-"ted by this act, shall, after the 20th of May, be import-

Wines, the produce of France, imported into the United States before the non-intercourse act, re-exported to a Danish Island, there sold to a merchant of that place, and thence exported to New Orleans during the operation of that act of congress, were liable to forfeiture under that law.

An informa-tion in the admiralty for a forfeiture must contain substantial statement of

SCHOONER
HOPPET
& CARGO
*v.*
U. STATES.

"ed into the United States or the territories thereof, "contrary to the true intent and meaning of this act," "such articles, as well as all other articles on board the "same ship or vessel belonging to the owner of such "prohibited articles, shall be forfeited."

*the offence. A general reference to the provisions of the statute is not sufficient. If the information be defective in that respect, the defect is not cured by evidence of the facts omitted to be averred in the information. The decree must be secundum allegata, as well as secundum probata.*

And by the 6th section it is enacted, "that if any arti- "cle or articles, the importation of which is prohibited "by this act, shall, after the 20th of May, be put on "board of any ship or vessel," "with intention to im- "port the same into the United States or the territories "thereof, contrary to the true intent and meaning of "this act, and with the knowledge of the owner or mas- "ter of such ship or vessel," "such ship or vessel "shall be forfeited."

The information against the *vessel* did not aver that the goods were put on board the vessel with intention to import the same into the United States or the terri- tories thereof contrary to the act, *with the knowledge of the owner or master of the vessel ;* nor did the informa- tion against the cargo state *that such of the goods as were not prohibited belonged to the owner of the prohibited goods ;* but both informations averred generally that the goods were imported contrary to the 4th, 5th and 6th sections of the act.

It appeared from the evidence and admissions in the case that the wines, which constituted the principal part of the cargo, were the produce of France, and had been shipped from New York to the Danish Island of St. Bartholomews, where they were purchased by a merchant of that place and shipped to New Orleans. It did not appear certainly whether they had been im- ported into New York since the 20th of May, referred to in the act of Congress.

HARPER, *for the Appellants,*

Contended that it was probable from all the circum- stances that the wines had been imported into the United States before the prohibition, and if so they had become incorporated with the general commerce of the country, and had lost their national character as French produce. He also insisted on the defect in the informations, as stated above.

PINKNEY, *Attorney General, and* LAW, *contra.*

The letter of the law is too plain to admit of construction. These wines never could cease to be the produce of France. They were imported from a foreign place into a territory of the United States during the prohibition by law. If they had acquired an American character, it was lost by receiving the drawback. It does not appear that they were imported into New York before the prohibition. If they had been, the proof was so easy, that the want of it creates the strongest presumption that the fact was not so.

The intent is only to be known by the act of the owners. They were bound to know the laws of the country to which they were trading. It is sufficient for the United States to prove a knowledge that the goods were put on board for that voyage.

*Feb. 27th....* MARSHALL, *Ch. J.* delivered the opinion of the Court as follows :

This is an appeal from a sentence of the Court for the district of Orleans condemning the schooner Hoppet and her cargo, as forfeited to the United States for violating the non-intercourse law.

In the district Court two informations were filed by the attorney for the United States, one claiming the ship as being forfeited, and the other claiming the cargo. Objections have been made to each of these informations which will be separately considered.

The information against the vessel charges in substance, that while the act, entitled " An act to interdict commercial intercourse," &c. was in force, certain goods of the growth, produce, or manufacture of France, were imported into the United States, to wit: into the port of New Orleans, in the said vessel from some foreign port or place, to wit: from St. Bartholomews contrary to, and in violation of the 4th, 5th and 6th sections of the act. By reason of which, and by virtue of the act of congress, entitled " An act, &c. the said vessel her tackle, apparel and furniture have become forfeited to the United States.

SCHOONER HOPPET & CARGO

*v.*

U. STATES.

SCHOONER    The charge contained in this information, and the
HOPPET   only charge it contains is, an importation into the Uni-
& CARGO   ted States of certain prohibited articles while the pro-
*v.*     hibitory act was in force. How far does this crime af-
U. STATES. fect the vessel?

This question must be answered by the law. The
6th section of the act enacts in substance, that if any ar-
ticle, the importation of which is prohibited, shall be put
on board of any ship, &c. with intention to import the
same into the United States or the territories thereof,
contrary to the true intent and meaning of this act, and
with the *knowledge* of the owner or master of such ship,
&c. such ship, &c. shall be forfeited.

This is the only section of the act which imposes a
forfeiture on the vessel. It will be perceived that the
crime consists in the prohibited articles being laden on
board a ship with *intent* to be imported into the United
States, and with the *knowledge* of the owner or master of
the vessel. A union of a lading with the intention to im-
port, and with the knowledge of the owner or master, is ne-
cessary to constitute the crime. Without these essen-
tial ingredients, the particular offence, which alone in-
curs a forfeiture, cannot be committed.

In the information under consideration neither of
these offences is charged. It is neither alleged that the
prohibited goods were put on board the ship with inten-
tion to be imported into the United States, nor with the
knowledge of the owner or master.

The information against the cargo charges in sub-
stance, that certain prohibited articles and certain other
articles not stated to be prohibited, were brought into the
United States, to wit: into the port of New Orleans, while
the act, entitled " An act to interdict commercial inter-
course" &c. was in force, from some foreign port or
place, by reason of which, and by virtue of the act, the
whole cargo of the Hoppet has become forfeited.

The 5th section of the act, under which this prosecu-
tion was sustained, inflicts forfeiture on the prohibited
articles imported contrary to law, and also on " all
other articles on board the same ship or vessel, boat,

raft or carriage, belonging to the owner of such prohibited articles.

The *innocent* articles are liable to forfeiture only where they belong to the owner of the *prohibited* articles. It is this association, and this alone, which constitutes their crime. Their being in the same vessel exposes them to no forfeiture unless they belong to the same person.

In the case under consideration, the information does not allege that the innocent and the prohibited articles did not belong to the same person.

The first question made for the consideration of the Court is this;—Will this information support a sentence of condemnation pronounced against the vessel and the innocent part of the cargo?

That the information states a case by which no forfeiture of the ship or the innocent part of the cargo has been incurred, unless its defectiveness be cured by the allegation that the act was done contrary to, and in violation of the provisions of the statute, has been already fully shown.

It is not controverted that in all proceedings in Courts of common law, either against the person or the thing for penalties or forfeitures, the allegation that the act charged was committed in violation of law, or of the provisions of a particular statute will not justify condemnation, unless, independent of this allegation, a case be stated which shows that the law has been violated. The reference to the statute may direct the attention of the Court, and of the accused, to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offence. The importance of this principle to a fair administration of justice, to that certainty introduced and demanded by the free genius of our institutions in all prosecutions for offences against the laws, is too apparent to require elucidation, and the principle itself is too familiar not to suggest itself to every gentleman of the profession.

Does this rule apply to information in a Court of admiralty?

SCHOONER
HOPPET
& CARGO
*v.*
U.STATES.

SCHOONER      It is not contended that all those technical niceties which
HOPPET      are unimportant in themselves, and standing only on pre-
& CARGO      cedents of which the reason cannot be discerned, should
v.      be transplanted from the Courts of common law into
U. STATES.  the Courts of admiralty.   But a rule so essential to jus-
—————      tice and fair proceeding as that which requires a sub-
stantial statement of the offence upon which the prosecu-
tion is founded, must be the rule of every Court where
justice is the object, and cannot be satisfied by a gener-
al reference to the provisions of a statute.  It would
require a series of clear and unequivocal precedents to
show that this rule is dispensed with in Courts of
admiralty, sitting for the trial of offences against muni-
cipal law.

It is, upon these and other reasons, the opinion of the
Court, that the information is not made good by the alle-
gation that the offence was committed against the provi-
sions of certain sections of the act of congress.

Is it cured by any evidence showing that in point
of fact the vessel and cargo are liable to forfeiture ?

The rule that a man shall not be charged with one
crime and convicted of another, may sometimes cover
real guilt, but its observance is essential to the preser-
vation of innocence.  It is only a modification of this
rule, that the accusation on which the prosecution is
founded, should state the crime which is to be proved,
and state such a crime as will justify the judgment to be
pronounced.

The reasons for this rule are,

1st. That the party accused may know against what
charge to direct his defence.

2d. That the Court may see with judicial eyes that
the fact, alleged to have been committed, is an offence
against the laws, and may also discern the punishment
annexed by law to the specific offence.  These reasons
apply to prosecutions in Courts of admiralty with as
much force as to prosecutions in other Courts.  It is
therefore a maxim of the civil law that a decree must be
*secundum alegata* as well as *secundum probata.*  It would

seem to be a maxim essential to the due administration of justice in all courts.

, It is the opinion of the Court that this information will not justify a sentence condemning the schooner Hoppet and that part of 'her cargo which is not *alleged* to be of the growth, produce, or manufacture of either France or Great Britain, or the dependencies of either of those powers, whatever the *fact* may be.

There are certain wines imported in this vessel alleged to be of the growth, produce, or manufacture of France. These wines were exported from the United States to St. Bartholomews, where they were purchased by the consignee and shipped to New Orleans. It is contended, that having been imported into the United States, previous to the passage of the non-intercourse law, their exportation and re-importation does not subject them to the penalties of that law. But the Court is unanimously of opinion that they come completely within the provisions of the act of congress.

It is the opinion of the Court, that there is no error in that part of the sentence of the district Court of Orleans, which condemns the wines in the information mentioned as forfeited to the United States, but that there is error in that part of the sentence which condemns the schooner Hoppet and the residue of her cargo.

This Court doth therefore adjudge and order that so much of the sentence of the district Court as condemns the schooner Hoppet and the thirty-five hogsheads of molasses, five barrels of molasses, twelve dozen of cocoa nuts and twelve pounds of starch, part of the cargo of the said schooner, be and the same is hereby reversed and annulled ; and the said sentence, as to the residue of the cargo, is in all things affirmed.