## THE SAGATIND.

(District Court, S. D. New York. April 27, 1925.)

**1. Customs duties ⬤═130—Internal revenue ⬤═46—Intoxicating liquors ⬤═250 — Libel must state cause of action and show jurisdiction.**

Under admiralty rule 21, libel for forfeiture of vessel for violation of National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), Rev. St. § 3450 (Comp. St. § 6352), and Tariff Act 1922, §§ 585, 586 (Comp. St. Ann. Supp. 1923, §§ 5841h4, 5841h5), must set forth facts showing cause of action and jurisdiction to seize vessel, though seizure is made under Treaty with Norway of July 2, 1924.

**2. Customs duties ⬤═130—Internal revenue ⬤═46—Intoxicating liquors ⬤═250—Libel for forfeiture of vessel, not alleging location of vessel at time of alleged violation, held defective.**

Libel for forfeiture of Norwegian steamship for violation of Tariff Act 1922. §§ 585. 586 (Comp. St. Ann. Supp. 1923, §§ 5841h4, 5841h5), National Prohibition Act. tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), and Rev. St. § 3450 (Comp. St. § 6352), held defective, in view of Treaty with Norway July 2, 1924, where the place of seizure was not definitely alleged.

**3. Customs duties ⬤═130—Libel for forfeiture of vessel held defective.**

Counts in libel for forfeiture of vessel for violation of Tariff Act 1922, § 585 (Comp. St. Ann. Supp. 1923, § 5841h5), not alleging that the vessel arrived from a foreign port or place within the limits of a collection district, were defective.

**4. Customs duties ⬤═130—Libel for forfeiture of vessel held defective.**

Counts in libel for forfeiture of vessel for violation of Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), not alleging that the vessel came from a foreign port, or that merchandise was unladen after its arrival within four leagues of the coast of the United States, were defective.

**5. Intoxicating liquors ⬤═250—Libel for forfeiture of vessel held defective.**

Counts in libel for forfeiture of vessel under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), for transporting intoxicating liquor, not alleging arrest and conviction of person in charge were defective.

**6. Internal revenue ⬤═46—Libel for forfeiture of vessel held defective.**

Counts in libel for forfeiture of Norwegian vessel, under Rev. St. § 3450 (Comp. St. § 6352), not alleging use of vessel in removal and concealment of intoxicating liquors within distance of coast to which territorial jurisdiction is extended by Treaty with Norway of July 2, 1924, were defective.

**7. Internal revenue ⬤═46—Seizure of vessel by revenue officers not jurisdictional.**

Under Rev. St. § 3450 (Comp. St. § 6352), seizure of vessel by Commissioner of Internal Revenue or his subordinates is not jurisdictional, and any seizure is sufficient, if ground of forfeiture exists.

In Admiralty. Libel by the United States against the Norwegian steamship Sagatind, Karl Johnsen, claimant. On exceptions to libel. Exceptions sustained.

William Hayward, U. S. Atty., of New York City (Francis A. McGurk, Asst. U. S. Atty., of New York City, of counsel), for libelant.

Karl T. Frederick, of New York City John Schubert, of New York City, of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. This case comes up on exceptions to a libel for forfeiture of the Norwegian steamship Sagatind. The libel states ten separate causes of forfeiture. The first, second, third, and fourth causes of forfeiture are for violations of section 585 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h4); the fifth, sixth, seventh, and eighth for violations of section 586 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h5), and of the Act of October 28th, 1919, known as the National Prohibition Act (Comp. St. Ann. Supp. § 10138¼ et seq.); the ninth and tenth for violations of section 3450 of the Revised Statutes of the United States (Comp. St. § 6352).

In these exceptions the claimant raises the following broad contentions:

(1) Each of the ten alleged causes of forfeiture is defective, in that each fails to state facts sufficient to constitute a violation of the particular statute relied upon.

(2) Even though it be assumed that one or more of these alleged causes of forfeiture does state, or is amended to state facts sufficient to constitute a violation, and even though it be admitted for the purpose of these exceptions that the facts alleged are true, yet the seizure of the steamship was not within the jurisdiction or lawful power of the United States of America.

The first count of the libel alleges that the vessel Sagatind arrived on or about October 6, 1924, off the coast of New Jersey and/or Long Island, and was seized by the collector of customs because the Sagatind, "by means of a small boat bearing the name Thorndyke, acting in concert with said vessel, Sagatind, made contact with the shore of the United States and there was then un-

laded from said vessel Sagatind while in contact with the shore of the United States within the limits of the collection district of New York, certain merchandise, to wit, 2,720 cases of intoxicating liquor, without making report or entry as required by law, and without any necessity for such unlading by reason of stress of weather or other cause," all in violation of section 585 of the Tariff Act of September 21, 1922. The second, third, and fourth counts allege other and similar offenses. The fifth, sixth, seventh, and eighth counts allege the same unlading of liquor as in the former counts before receiving a permit, and for the purpose of avoiding customs duties and the laws prohibiting the importation of intoxicating liquor for beverage purposes, all in violation of section 586 of the said Tariff Act of September 21, 1922, and the Prohibition Act of October 28, 1919.

The ninth and tenth counts each alleges that during certain different and specified periods a stated number of cases of whisky in respect whereof a tax was imposed was "removed, deposited and concealed on board and by means of the vessel Sagatind with intent to defraud the United States of the said tax."

Section 585 of the Tariff Act of September 21, 1922, provides:

"If any vessel or vehicle from a foreign port or place arrives within the limits of any collection district and departs or attempts to depart, except from stress of weather or other necessity, without making a report or entry under the provisions of this act, or if any merchandise is unladen therefrom before such report or entry * * * such vessel * * * shall be subject to forfeiture, and any customs or coast guard officer may cause such vessel or vehicle to be arrested and brought back to the most convenient port of the United States."

Section 586 of the Tariff Act of September 21, 1922, provides:

"The master of any vessel from a foreign port or place who allows any merchandise (including sea stores) to be unladen from such vessel at any time after its arrival within four leagues of the coast of the United States and before such vessel has come to the proper place for the discharge of such merchandise, and before he has received a permit to unlade, shall be liable to a penalty equal to twice the value of the merchandise but not less than $1,000, and such vessel and the merchandise shall be subject to seizure and forfeiture."

4 F.(2d)—59

Title 2, § 26, of the National Prohibition Act of October 28, 1919, provides that:

"When the Commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. * * * The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized." Comp. St. Ann. Supp. 1923, § 10138½mm.

Section 3450 of the Revised Statutes is as follows:

"Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case all the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

The libel does not allege where the seizure of the Sagatind took place. Rule XXI of the United States Admiralty Rules provides:

"All informations and libels of information upon seizures for any breach of the revenue, or navigation or other laws of the United States, shall state the place of seizure, whether it be on land or on the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States, and the district within which the property is brought and where it then is."

[1, 2] There is no allegation in the libel of the place of seizure or the flag under

which the Sagatind sailed, or that she came from a foreign port. It was stated upon the argument that the Sagatind was a Norwegian vessel. By the Treaty of July 2, 1924, between the United States and Norway, it was provided, among other things, as follows:

"(1) His majesty agrees that he will raise no objection to the boarding of private vessels under the Norwegian flag outside the limits of territorial waters by the authorities of the United States, its territories or possessions in order that enquiries may be addressed to those on board and an examination be made of the ship's papers for the purpose of ascertaining whether the vessel or those on board are endeavoring to import or have imported alcoholic beverages into the United States, its territories or possessions in violation of the laws there in force. When such enquiries and examination show a reasonable ground for suspicion, a search of the vessel may be initiated.

"(2) If there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States, its territories or possessions prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States, its territories or possessions for adjudication in accordance with such laws.

"(3) The rights conferred by this article shall not be exercised at a greater distance from the coast of the United States its territories or possessions than can be traversed in one hour by the vessel suspected of endeavoring to commit the offense. In cases, however, in which the liquor is intended to be conveyed to the United States its territories or possessions by a vessel other than the one boarded and searched, it shall be the speed of such other vessel and not the speed of the vessel boarded, which shall determine the distance from the coast at which the right under this article can be exercised."

The foregoing treaty extends any limitation which might exist upon the jurisdiction of the court to proceed against offending vessels which may be subject to forfeiture for violations of our laws "prohibiting the importation of alcoholic beverages" to such cases as may come within the terms of the treaty, and, I think, also implies as an alternative rule of treaty-made law that vessels shall not be proceeded against for violation of such laws when seizure was made beyond the distance from our coast prescribed in the treaty. In other words, the treaty completely deals with the extreme right of seizure upon which initial jurisdiction of the cause of forfeiture must depend.

But there must be a federal law of forfeiture covering the violation and proper specification of the offense sought to be alleged. The admiralty rule requires a statement of the place of seizure and that place should be so stated as affirmatively to show that if the allegation be correct the court would have jurisdiction. Moreover, it will perhaps save the trouble of unnecessary interrogatories if the approximate latitude and longitude of the place of seizure be given. If the government relies on the treaty to furnish jurisdiction for the seizure, there should be an allegation to the effect that the contact vessel could reach the coast from the place of seizure in one hour.

Now it is to be noticed that the treaty creates no independent cause of forfeiture, though it extends the right of seizure in cases where forfeiture can be had for violation of our prohibition laws. It merely provides that, "if there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States * * * prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States, * * * for adjudication *in accordance with such laws.*" (The italics are mine.) In other words, facts must be set forth showing that a cause of action for forfeiture under these laws exists and that there was jurisdiction to seize the vessel. United States v. One Raft of Timber (C. C.) 13 F. 796; The Hoppet, 7 Cranch. 389, 3 L. Ed. 380.

[3] Now under section 585 of the Tariff Act (1) the vessel must have arrived "from a foreign port or place * * * within the limits of a collection district"; and (2) merchandise must have been unladen therefrom without "report or entry" under the provisions of the Tariff Act. There is no allegation of (1) in the first, second, third, and fourth counts. As these counts stand, they are, therefore, defective (a) for not stating the place of seizure; (b) for not stating that the vessel arrived from a foreign port or place within the limits of a collection district. It may be, however, that these defects can all be cured by amendment.

[4] Under section 586 of the Tariff Act (1) the vessel must be "from a foreign port or place"; and (2) the master must have allowed merchandise to be unladen "from such vessel * * * after its arrival within four leagues of the coast of the United

States. *  *  *" This section does not purport to exercise jurisdiction over every vessel, but is limited to the unlading of merchandise from a vessel "after its arrival within four leagues of the coast of the United States." There is no allegation that the vessel came from a foreign port, or that merchandise was unladen from it "after its arrival within four leagues of the coast of the United States." To sustain the fifth, sixth, seventh, and eighth causes of action for forfeiture under section 586 of the Tariff Act, these statutory prerequisites must be pleaded and proved. United States v. Virgin, Fed. Cas. No. 16,625.

[5] I find no provision for forfeiture under the Prohibition Act, except that in section 26. This section provides that there must be (1) "transporting in violation of law of intoxicating liquors"; (2) arrest of the person in charge of the liquors and vessel; and (3) "conviction of the person so arrested," as a basis for forfeiture of the vessel.

It is doubtless true that a transportation of intoxicating liquors within the distance from our coast set by the treaty with Norway, for the purpose of importing them into the United States, would be an unlawful transportation because a part of a scheme to defraud this government and to violate its laws; but to come within the forfeiture provisions of section 26 of the Prohibition Act the proceedings for forfeiture would have to be preceded by the arrest and conviction of the person in charge. The necessary allegations to bring the case within the terms of the statute have not been made in counts 5, 6, 7, and 8. In these counts there is likewise no statement of the place of seizure as required by admiralty rule 21, as well as by general rules of pleading applicable to such cases.

[6, 7] Under section 3450 of the Revised Statutes it must appear that the use of the Sagatind in the removal or for the concealment of the commodities was in a place to which the laws of the United States have application. I think it may reasonably be said that the treaty extends the territorial jurisdiction of the United States to places within the distance from our coast within which the United States and Norway have covenanted by treaty that seizure may be made of vessels attempting to commit offenses against our laws. If this be so, the ninth and tenth counts could stand, if they contained allegations showing (1) a seizure within such a distance; and (2) a use of the Sagatind in the removal or concealment of intoxicating liquors within such area. No such allegations are in the libel. I do not regard the seizure by the Commissioner, or some one acting under his authority, as mandatory. Any seizure is sufficient, if a ground of forfeiture existed to give the court jurisdiction.

Thus it appears that all the counts are defective; but, as the defects which I have pointed out may perhaps be remedied by amendment, leave to amend will be granted.

It is contended as a matter of law that, irrespective of the treaty, this court has jurisdiction over offenses against our laws committed in times of peace by foreign vessels and citizens on the high seas. Church v. Hubbart, 2 Cranch, 187, 2 L. Ed. 249, is chiefly relied upon. That case seems perhaps to have been a case involving in some respects relations resembling those of belligerents, where entirely different rules apply to extraterritorial rights of seizure; but, if regarded as sanctioning the general right to seize a foreign vessel on the high seas for offenses against our laws, it is not in accord with the later cases of Rose v. Himely, 4 Cranch, 241, 2 L. Ed. 608, The Antelope, 10 Wheat. 66, 6 L. Ed. 268, and the implications of the decision of the Supreme Court in the case of In re Cooper, 143 U. S. at p. 498, 12 S. Ct. 453, 36 L. Ed. 232, as well as the opinion of Sir William Scott, in Le Louis, 2 Dodson (Adm. Cas.) 210.

Exceptions 1, 2, 4, 5, 6, 7, and 8 are sustained. Exception 3 is overruled, because based on matters outside the libel, and 9 is overruled, because the particulars referred to are sufficiently pleaded, and, if further details are necessary to enable claimant to prepare his defense, they should be sought by interrogatories addressed to similar counts of the libel, if amended.

An amended libel may be filed within 10 days. Settle order on notice.