## HORSLEY v. UNITED STATES.
### No. 11418.

Circuit Court of Appeals, Fifth Circuit.
Jan. 3, 1947.

Harry V. Booth and Samuel P. Love, both of Shreveport, La., for appellant.

Malcolm E. Lafargue, U. S. Atty., and J. Lyle DeBellevue, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

An information filed in the court below alleged that Maximum Price Regulation No. 540,[1] as amended of the Office of Price Administration, was issued June 10, 1944, to become effective July 10, 1944, and that Section 2 of said Maximum Price Regulation provides, among other things, that:

"No person shall sell or deliver, or of-

---

[1] The exact allegation as to "Maximum Price Regulation No. 540" was: "(2) That under the authority vested in the Price Administrator of the Office of Price Administration by the Emergency Price Control Act of 1942, as amended, Pub.Laws No. 421 and 729, 77th Congress, 2d Session, and Pub.Law No. 383, 78th Congress, 2d Session, 50 U.S.C.A. Appendix, § 901 et seq., E. O. 9250, 50 U.S.C.A.Appendix, § 901 note, 7 F.R. 7871; E.O. 9328, 50 U.S.C.A.Appendix, § 901 note, 8 F.R. 4681, Maximum Price Regulation No. 540, as amended, of the Office of Price Administration, was issued June 10, 1944, to become effective July 10, 1944, and published in 9 F.R. 6434."

fer to sell or deliver, any used car at a price higher than the maximum price permitted by said regulation."

The information then charged Boyd Yearwood and Bill Horsley in these words: "did knowingly, willfully, and unlawfully sell and deliver and caused to be sold and delivered to Mrs. Essie Lee White, one 1941 Chevrolet Master Deluxe Tudor Sedan, Motor No. AA-224395, for the sum and price of $1,563.69, which price is far in excess of the ceiling price of $866.55 [2] as provided for in said Maximum Price Regulation No. 540, as amended, of the Office of Price Administration, for said model and type of automobile * * *;" that "said defendants then and there well knew that they acted in violation of said Maximum Price Regulation No. 540, as amended."

Mrs. White on November 10, 1944, acquired from Boyd Yearwood a 1941 Chevrolet Master Deluxe Two-door Sedan.[3] Boyd Yearwood on the same date acquired a 1937 Ford "60" from Mrs. White. In the absence of Yearwood, Bill Horsley, a salesman employed by Yearwood in his used-car business, completed the sale, except for a few details. The OPA ceiling price on the Chevrolet, with warranty, heater, license fee, and sales tax included, was $1,082.44. Yearwood received a check from Mrs. White for $363.69 and a check from a company that financed the purchase of the Chevrolet for $700. All this evidence was not in dispute.

Horsley claims that he first offered to sell Mrs. White the Chevrolet at the ceiling price; that later, when he learned that she wanted to trade in the Ford "60," he offered to make an allowance of $18.75 for it. The $363.69 check plus the $700 check plus the $18.75 would add up to the $1,082.44 ceiling price. While Mrs. White admitted Horsley did not require her to trade in her Ford, she claims Horsley offered to sell her the Chevrolet for $1500 and offered to allow her $500 for her Ford. Much of the record concerns evidence relevant to the reasonable value of the Ford "60" Yearwood acquired from Mrs. White. To illustrate, one witness testified that as a dealer he would give nothing for this model of Ford because on a resale the dealer would be liable to great expense on his warranty. On the other hand, the District Attorney emphasized the fact that Yearwood resold the same Ford (with warranty) a few hours later for $410.

After the evidence was in, the trial court granted a motion for a directed verdict on behalf of Yearwood on the theory that in his absence Yearwood was not liable for the criminal acts of his employee.

■ Early in its charge to the jury the court below stated that the case was brought under Section 2 of the Maximum Price Regulation and that Section 2, among other things provided:

"No person shall sell or deliver, or offer to sell or deliver, any used car at a price higher than the maximum price permitted by said regulation."

Later in its charge the court said:

" * * * It finally comes to the proposition of the question of facts, as to whether the value allowed for that car was reasonable, and it is for you to say what happened here, as to whether or not this lady consented to receive eighteen dollars and seventy-five cents for her Ford Automobile, and whether that price was a reasonable value for that car. If you arrive at the conclusion that that automobile was worth more than eighteen dollars and seventy-five cents, and in that connection you do not have to arrive at a value in the full amount of five hundred dollars, nor in the amount of four hundred dollars, but if it was substantially in excess of that amount allowed, or substantially in excess of the value that any reasonable man or woman would have taken or considered, then you may come to the conclusion, add-

---

[2] The District Attorney first contended that Horsley had no right to charge Mrs. White in excess of the "as is" price for the Chevrolet automobile since they failed to deliver her a written act of warranty. Later the District Attorney dropped this contention.

[3] As one of the grounds for reversal the appellant urges that the "Tudor" description in the information did not fit this car. We need not concern ourselves with this discrepancy.

ing these values together as you have them here in the record, that the defendant did charge in excess of the ceiling price as charged in this bill of information."

After the jury brought in a verdict of guilty, Horsley was sentenced to thirty days' imprisonment, and a fine of $1,000. On this appeal he names seven grounds of error. Since we shall sustain two of the grounds, we shall not discuss the other five.

The court below refused the request of Bill Horsley to make this charge:

"I charge you, as a matter of law, that even if you find that defendant violated the price ceiling, as charged by the government, you must still acquit the defendant, if you further find that he did so innocently, or inadvertently; in other words, if you find that [he was] in good faith. (Sec. 925, Par. 'D,' U.S.C.A. Title 50, App. 404.)"

50 U.S.C.A.Appendix, § 925 (d), provides:

"No person shall be held liable for * * penalties in any Federal * * * court * * * in respect of anything done or omitted to be done in good faith pursuant to any provision of * * * any regulation * * * of the Administrator of the Office of Price Administration * * *."

As the court's general charge did not cover the question of Horsley's good faith, the refusal was prejudicial error.

■ At the trial but before the reception of evidence, the court refused the following motion:

" * * * The charge [is] of the sale of a certain used automobile at a certain price, and there is no allegation that that price or sum alleged to be in excess of the ceiling price was brought about or was part of any other transaction other than that specifically alleged, and therefore, any evidence admitted about any other transaction is contrary to the pleadings, and to admit it is to deprive the defendants of the provisions of the Second Amendment to the Constitution of the United States."

The ground for the refusal was:

"The objection is overruled for the reason that insofar as any details of the transaction are concerned, those could have been furnished on a motion for a bill of particulars, and the Government did not have to allege its evidence; that while it is true the statute deals with used automobiles, the language of the indictment is such that I do not think any other conclusion could be reached than that the transaction involved a used automobile."

The information charges the appellant with a violation of Section 2, Maximum Price Regulation No. 540. Section 9 of that regulation provides:

"It shall be a violation of this regulation to charge a price above the applicable maximum price in connection with any sale of a used car, either alone or in conjunction with any other consideration even though the price increase appears only indirectly. Specifically, the seller is not permitted *to require* the purchaser, as a condition of the sale or transfer of the car, * *. * to make payment in whole or in part by exchanging or transferring or trading in any other vehicle or other product or commodity, or where there is an exchange, transfer, or trade-in, *to require him* to accept an allowance for the vehicle, product or commodity exchanged, transferred or traded in which is below its reasonable value. * *" [Emphasis added.]

The evidence as to the reasonable value of the 1937 Ford "60" was improperly admitted, and the charge relevant thereto was improperly given, since the information did not charge appellant with violating Section 9. In Hoppet v. United States, 7 Cranch 389, 393, 3 L.Ed. 380, 390, the court said:

"The rule that a man shall not be charged with one crime and convicted of another, may sometimes cover real guilt, but its observance is essential to the preservation of innocence. It is only a modification of this rule, that the accusation on which the prosecution is founded, should state the crime which is to be proved, and state such a crime as will justify the judgment to be pronounced."

■ The suggestion of the court below that the appellant's remedy was in a bill of particulars does not cure the defect in the indictment. The Supreme Court, in Hagner v. United States, 285 U.S. 427, 431, 432, 52 S.Ct. 417, 419, 76 L.Ed. 861, 865, said:

"The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy as to what extent he may plead a former acquittal or conviction.' Cochran v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 705; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606 607, 10 Am.Crim.Rep. 251."

The appellee relies upon the harmless-error statute:[4]

"No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

The Supreme Court has recently stated, in Kotteakos v. United States, 328 U.S. 750, at page 764, 66 S.Ct. 1239, 1248:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so,

or if one is left in grave doubt, the conviction cannot stand."

We cannot say with fair assurance in this case that the jury was not substantially swayed by the admission of evidence relative to, and the charge given concerning, the reasonable value of the 1937 Ford "60."

The judgment appealed from is reversed.

McCORD, Circuit Judge (specially concurring).

The Bill of Information sufficiently charges violation of Section 2 of MPR 540 as amended. It charges the willful and unlawful sale of a used car above the lawful ceiling price. I agree to a reversal of the case solely because of statements in the court's charge which I think may have confused the jury as to the real issues in the case.

I agree that the court should have charged the jury regarding willfulness and good faith of the defendant in the questioned transaction. In my opinion, however, the damaging fault of the charge lies in the stress placed on the reasonableness of value of the Ford "60" automobile traded in by Mrs. White.

I disagree with the views of the majority that it was error to allow any evidence as to the reasonable value of the Ford "60." Mrs. White testified that Horsley agreed to allow her $500 for her Ford "60" on the purchase of the Chevrolet. If her testimony was believed by the jury, it established beyond question that the ceiling price was exceeded by approximately $500. Horsley contended that only $18.75 was allowed for Mrs. White's Ford "60." If the jury believed his story, the price charged for the Chevrolet was the exact ceiling price. Testimony as to the reasonable value of the trade-in car was pertinent in relation to the credibility of witnesses. The crucial issue was not the reasonable value of the trade-in car. The vital issue was who was telling the truth, Mrs. White or the defendant? Which was the reasonable story? Was it reasonable to believe that Mrs. White practically gave away her Ford

---

[4] 18 U.S.C.A. § 556.

"60" for $18.75 (paying a final note for $22.50 in order to clear it for trade-in), or was it more reasonable to believe that she was allowed $500? The court's charge in one part clearly defines the issue, but the judge did not stop there. Parts of his charge are in such language that a jury might conclude that the defendant was being tried for allowing less than a reasonable value for the trade-in automobile, and not for actually charging more than the ceiling price.[1]

Since the court's charge may have misled the jury into thinking that allowance of less than a reasonable price for the trade-in automobile was in itself the violation charged, I agree to reversal of the case.

---

[1] The Bill of Information does not charge, and the evidence does not establish, violation of Section 9 of MPR 540 which relates to the "requiring" of a trade in. An amendment promulgated subsequent to the transaction complained of in this case requires the allowance of a reasonable value on a trade-in.