**UNITED STATES v. MIGNON et al.**

No. 15664.

United States District Court
E. D. Pennsylvania.

Feb. 12, 1952.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for plaintiff.

James F. Masterson, Philadelphia, Pa., for defendants.

GRIM, District Judge.

The Servicemen's Readjustment Act[1] makes it possible for the United States Gov-

---

1. 38 U.S.C.A. §§ 694, 694a.

ernment to guarantee mortgages of war veterans on properties they purchase, but it prohibits the guarantee of these mortgages when the veteran has paid or is about to pay more for the property than its value as determined by an appraiser of the Veterans' Administration.[2] The Act does not make it a criminal offense, nor is it unlawful in any way, for the seller of a property to receive a consideration in excess of the appraisal by the Veterans' Administration. It merely prohibits the guarantee of the mortgage in such a case.

In the present case there is ample evidence from which it can be found that the Veterans' Administration guaranteed a veteran's mortgage on a property for which the veteran paid a sum in excess of the value as determined by the appraiser of the Veterans' Administration. Defendant Anthony Mignon was the seller who received a consideration in excess of the appraised value. Defendant Nellie Arcara was the real estate broker who handled the transaction. Both these defendants have been convicted under the indictment against them by a jury verdict. Both defendants have moved for a new trial and for judgments of acquittal.[3]

In order to be certain in each transaction where it guarantees a mortgage that the veteran has not paid more for the property than its appraised value, the Veterans' Administration requires the submission to it of a certificate from the mortgagee stating that the actual purchase price is not in excess of the Veterans' Administration appraised value. This certificate is included in a "Home Loan Report" which the mortgagee makes to the Veterans' Administration. In the present case, the mortgagee, which was the Second Federal Savings and Loan Association of Philadelphia, made the "Home Loan Report" and as part thereof certified that the actual purchase price

was not in excess of the appraisal as determined by the appraiser of the Veterans' Administration. There is no contention that either the Savings and Loan Association or anyone in the Veterans' Administration knew that the actual price was in excess of the appraised value, or that any of them acted improperly in any way.

The pertinent provisions of the Act of Congress[4] on which the indictment in this case was based are as follows: "Whoever * * * shall make or use or cause to be made or used any false * * * certificate * * * knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined * * * or imprisoned * * *."

The first count of the indictment, under which defendants were indicted and tried charges in pertinent part that "Anthony Mignon, Nellie Arcara, and John J. Geldi, Defendants herein, did knowingly and wilfully make and/or cause to be made a false certificate relating to a matter within the jurisdiction of the Veterans Administration, * * * said certificate being more specifically described as a certification which formed part of a document entitled 'Home Loan Report', having to do with the purchase of premises * * * by one George F. Rook, a veteran, and the said certificate being then and there false in that it certifies that the said property was * * *" sold for a purchase price of $5,600, whereas the actual purchase price was approximately $1,800 in excess thereof. The second count charges the defendants with conspiracy to commit the crime charged in the first count, in violation of 18 U.S. C. Sec. 88 (1946 ed.) [now § 371].

The certificate was partly prepared and executed at the time of the settlement for

---

2. 38 U.S.C.A. Sec. 694a(a) (3).

3. Defendant John J. Geldi's motion for acquittal was granted during the trial of the case.

4. 18 U.S.C. § 80 (1946 ed.). Sec. 80 was derived from the Acts of Mar. 4, 1909, c. 321, sec. 35, 35 Stat. 1095; Oct. 23,

1918, c. 194, 40 Stat. 1015; June 18, 1934, c. 587, 48 Stat. 996; Apr. 4, 1938, c. 69, 52 Stat. 197. Sec. 80 was repealed by Act of June 25, 1948, c. 645, sec. 21, 62 Stat. 862, eff. Sept. 1, 1948. The substance of Sec. 80 is now incorporated in Secs. 287 and 1001 of revised Title 18, U.S.C., eff. Sept. 1, 1948.

the sale of the property. Mignon and Mrs. Arcara attended the settlement together with the veteran purchaser of the property, a representative of the title insurance company, and a representative of the mortgagee. Neither Mignon nor Mrs. Arcara signed the certificate in question or the Home Loan Report.

Mrs. Arcara had much to do with the negotiations which led to the fixing of the purchase price of the property, and there is sufficient evidence from which it can be found that she knew that the property was sold for a price in excess of the appraisal by the Veterans' Administration. But there is no evidence, direct or inferential, that either Mignon or Mrs. Arcara knew that a certificate was required stating that the actual purchase price did not exceed the appraised value, nor is there any evidence that either of them knew that such a certificate was made or contemplated, or that it was ever used or required in any case.

At the settlement Mrs. Arcara "represented" both the seller and the buyer of the property. She did not explain what she meant by "represented." Neither the seller nor the buyer had legal counsel in the transaction. The Home Loan Report, which included the certificate, was signed by the buyer. If Mrs. Arcara had attended the settlement as an attorney-at-law representing the buyer, it could be presumed that she read the Home Loan Report and that the signature of the buyer thereon appeared there as a result of her advice. In view of this, the capacity in which Mrs. Arcara "represented" the buyer becomes of great importance, because from this presumption she could be found guilty of causing the report and certificate to be made. The evidence on this point is not clear. At least it is not clear beyond a reasonable doubt that she represented the buyer as an attorney-at-law. Mrs. Arcara is not an attorney-at-law. She is a real estate broker only. Since she is not a lawyer, her admission that she represented the buyer cannot be taken to mean that she represented the buyer as a lawyer as well as a real estate broker. Perhaps she acted as a lawyer, as laymen sometimes do, and if she did, it is unfortunate that she cannot be held to the same accountability as a lawyer, but under the evidence in the case she cannot be so held.

The question in the case, therefore, comes down to this: Can a person be convicted of knowingly causing a certificate containing specific false information to be made when there is no proof that he or she knew that a certificate calling for such specific information was required or made and, indeed no proof that he or she knew that any certificate was required or made? In my opinion the answer is clearly in the negative.

The defendants may have been guilty of a crime, see Heald v. United States, 10 Cir., 1949, 175 F.2d 878, but they are not guilty of the specific crime for which they have been indicted and tried. They cannot be convicted of a crime for which they have not been indicted: The Hoppet,[5] 1813, 7 Cranch 389, 11 U.S. 389, 3 L.Ed. 380; U. S. v. Tandaric, 7 Cir., 1945, 152 F.2d 3, 6, certiorari denied 1936, 327 U.S. 387, 66 S.Ct. 703, 90 L.Ed. 1012.

Therefore, the motion for judgment of acquittal must be granted as to both defendants.

And now, February 12, 1952, in accordance with the foregoing opinion, it is Ordered that defendant Anthony Mignon's motion for a new trial be and it hereby is denied and that his motion for judgment of acquittal be and it hereby is granted; and it is Further Ordered that defendant Nellie Arcara's motion for a new trial be and it hereby is denied and that her motion for judgment of acquittal be and it hereby is granted.

5. In this early case Chief Justice Marshall observed: "The rule that a man shall not be charged with one crime and convicted of another, may sometimes cover real guilt, but its observance is essential to the preservation of innocence." 7 Cranch 389, 394.