**PENOBSCOT POULTRY CO., Inc., et al.,**
Defendants, Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 5191.

United States Court of Appeals
First Circuit.

Heard March 6, 1957.

Decided May 8, 1957.

———◆———

David A. Nichols, Camden, Me., and John A. Mitchell, Portland, Me., for appellants.

Peter Mills, U. S. Atty., Portland, Me., with whom Chester D. Cram, Jr., Asst. U. S. Atty., Portland, Me., William W. Goodrich, Asst. Gen. Counsel, and Paul M. Steffy, Atty., Dept. of Health, Education and Welfare, Washington, D. C., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from judgments of conviction entered in the United States District Court for the District of Maine on an indictment charging appellants with violation of Sections 301(a) (52 Stat. 1042, 21 U.S.C.A. § 331(a)) and 402(a) (3) (52 Stat. 1046, 21 U.S.C.A. § 342(a) (3)) of the Federal Food, Drug and Cosmetic Act.[1]

Appellant Penobscot Poultry Co., Inc., a Maine corporation, processed, packed and introduced into interstate commerce at Presque Isle, Maine, certain "New York dressed" turkeys destined for New York.[2] Appellant Abraham I. Savitz was president and treasurer of Penobscot. The indictment charged the appellants in three counts with two interstate shipments of turkeys which were adulterated within the meaning of the Act and also alleged that the appellants previously had been convicted of a violation of the Act on December 19, 1952.

At the trial the allegations in the three counts of the indictment charging that the turkeys were adulterated under § 342(a) (3) in that they were contaminated with various forms of decomposed matter were dropped by the Government on the suggestion of the trial judge. After trial by jury the appellants were convicted on the remaining allegation in Count 1 and acquitted on the remaining allegations of Counts 2 and 3 of the indictment. A fine of $3,000 was imposed upon appellant Penobscot and a fine of $1,000 was imposed on appellant Savitz.

As indicated above, we are concerned only with Count 1 here. That count in pertinent part alleges:

"The Grand Jury charges:

"That Penobscot Poultry Co., Inc., a Maine corporation, and Abraham I. Savitz, an individual, at the time hereinafter mentioned president and treasurer of said corporation, the defendants herein, did, within the District of Maine, on or about November 16, 1954, in violation of the Federal Food, Drug, and Cosmetic Act, unlawfully cause to be introduced and delivered for introduction into interstate commerce at Presque Isle, State of Maine, for delivery to New York, State of New York, consigned to Producers Dis-

1. "§ 331. *Prohibited acts*

"The following acts and the causing thereof are hereby prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded. * * "

"§ 342. *Adulterated food*

"A food shall be deemed to be adulterated—

＊　　＊　　＊　　＊　　＊

"(a) * * * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; * * *."

2. "New York dressed" poultry is poultry that has been slaughtered and the feathers removed; the intestines, however, have been left intact, i. e. they are not eviscerated prior to shipment. The record further discloses that it is not violative of the Act to ship birds in interstate commerce that are "New York dressed."

tributing Agency, Inc., a number of crates containing a food, to wit, dressed turkeys.

"That said food, when caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was adulterated within the meaning of 21 U.S.C. 342(a)(3), in that said food consisted in part of a filthy substance by reason of the presence therein of birds smeared with fecal matter * * *."

The turkeys in question were examined by Food and Drug inspectors in the freezer of a New York consignee on November 18, 1954. The shipment examined consisted of thirteen crates and was admittedly shipped by the appellants. The inspectors testified that the edible portions of certain birds in this shipment were grossly contaminated with fecal matter; that portions of the birds were torn and macerated; and that fecal matter oozed from the vents of the birds. The Government's evidence leaves no doubt that these birds were in an adulterated condition when examined in New York. However, the issue on appeal being one of law we need not set out the details of adulteration in full.

The Government also presented evidence concerning the conditions under which turkeys were generally slaughtered and processed at appellants' plant. A witness testified that appellants, before the shipment in question, had been warned that they should properly starve the turkeys and vent them before shipment. By the presentation of its case the Government attempted to prove that the testimony of its witnesses regarding the condition of the turkeys as of the date of the examination in New York substantially reflected their condition on the date of the shipment at Presque Isle.

When both parties had rested, the appellants requested the trial judge to instruct the jury as follows:

"Unless the evidence satisfied you beyond a reasonable doubt that these turkeys were so adulterated that the food consisted at least in part of a 'filthy, putrid and decomposed substance' at the time of leaving the Presque Isle plant, you must find these respondents not guilty of this charge. These respondents are not charged with having so prepared or packed the turkeys that they might subsequently become adulterated."

The requested instruction was refused and the court instead instructed the jury:

" * * * Now, the Government says and has to prove to you, that this food consisted, not in whole—the statute says: 'Consisted in whole or in part', and there is no question about 'whole' here. Did it consist in part of a filthy substance? The Government says that it did by reason of fecal matter on the edible portions of the birds. I don't gather that it complains about fecal matter in the intestines if it stayed there, and we won't concern ourselves with that. It does object to the introduction into interstate commerce, and there is no question but what these birds were introduced into interstate commerce, of birds with fecal matter on them outside of the intestines, on the skin or other edible portions, *or of birds containing fecal matter which might reasonably be expected to and did get on the edible portions in transit.* * * * (Emphasis added.)

\* \* \* \* \* \*

"I think I have told you that there were two possibilities here that you were to consider about this matter of shipment into interstate commerce. If the birds were in violation at the time they were shipped, that would satisfy the requirements of the Act. I mean it would satisfy you of guilt that they were in violation at the time they were shipped. But it might be that the actual condition would occur only in transit. Now, we aren't concerned here with some extraneous matter getting into the birds from outside due to faulty packing during shipment. That might raise a very different question

and, indeed, I think it would require the Government if it had such a claim to proceed under a different portion of the Act. But we are concerned with birds that were shipped, admittedly, with this fecal matter at the time they left and were introduced for shipment, and I have suggested to you by indirection, *and I now instruct you formally that if these birds containing such fecal matter might reasonably be expected by the defendants to become in violation of the requirements of the Act during shipment, and did so become, that you may find that that was a violation of this Act.* * * * * " (Emphasis added.)

The appellants objected to the district court's refusal to instruct in accordance with their request and to the instructions of the court underlined above. These objections present the sole issue on appeal.

We hold that it was error for the trial judge to instruct the jury that appellants could be convicted of violating § 331(a) and § 342(a) (3) if it found that appellants might have reasonably expected the fecal matter to get on and it did get on the edible portions of the turkeys in transit.

 Sections 331(a) and 342(a) (3), which are in issue here, are criminal statutes. It is well established that criminal statutes should be strictly construed by the courts. United States v. Resnick, 1936, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127. See also Kordel v. United States, 1948, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52. Moreover, it is clear that where the language of this Act is unambiguous its words must be given their

ordinary meaning. United States v. R. C. Boeckel & Co., 1 Cir., 1915, 221 F. 885. Applying this principle of narrow construction we believe the words of § 331 (a) and § 342(a) (3), given their usual and ordinary meaning, prohibit the introduction into interstate commerce of food which *at the time of introduction* consists in whole or in part of a filthy substance. That is, we think the language of the two provisions looks to a present state of consisting of a filthy substance at the time of "introduction or delivery for introduction into interstate commerce," and not to a future condition that might be reasonably expected to arise after such introduction. Cf. United States v. Phelps Dodge Mercantile Co., 9 Cir., 1946, 157 F.2d 453, certiorari denied 1947, 330 U.S. 818, 67 S.Ct. 675, 91 L.Ed. 1270.[3]

 In construing these two sections as prohibiting only the introduction into interstate commerce of food which at the time of introduction is adulterated, we are mindful of the words of the Supreme Court in Kordel v. United States, supra, 335 U.S. at page 349, 69 S.Ct. at page 109, where it stated: "But there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it." Our construction leaves no loophole in the Act that would defeat its purpose. The offense in this case seems to be covered by Section 402(a) (4) of the Act (52 Stat. 1046, 21 U.S.C.A. § 342(a) (4)).[4] Had the appellants been charged with a violation of this sub-section the instructions given to the jury might have been correct. For it is § 342(a) (4) which is designed to make it a criminal offense for a person

---

3. Due to the Phelps Dodge decision, Section 304(a) of the Act (52 Stat. 1044, as amended 21 U.S.C.A. § 334(a)) was amended by Act, June 24, 1948, 2 U.S. Code Cong.Serv., p. 2119, Senate Rep. No. 1221, 80th Cong. 2d Sess. 1948.

4. "§ 342. *Adulterated food*
A food shall be deemed to be adulterated— 
* * * * *

"(a) * * * (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health;"

98

to prepare, pack or hold food under insanitary conditions that it may become contaminated. Berger v. United States, 8 Cir., 1952, 200 F.2d 818.

Of course, the district court also instructed the jury that they could find the appellants guilty under § 342(a) (3) if they were convinced that the turkeys consisted at least in part of a filthy substance at the time of introduction into interstate commerce. If the district court had limited its instructions to this the jury might have so found notwithstanding that there was no testimony concerning the actual condition of these turkeys at the time of such introduction. The Government might have effectively established that the condition of the birds as of the date of the examination in New York substantially reflected their condition on the date of the shipment. See Pasadena Research Laboratories v. United States, 9 Cir., 1948, 169 F.2d 375, certiorari denied 1948, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401. But we cannot say that the jury necessarily did so find. See United States v. Donnelly, 7 Cir., 1950, 179 F.2d 227. It is more than probable that in the posture of the evidence in the instant case the jury found the appellants guilty under the erroneous instruction of the trial judge.

By this erroneous instruction we think "the jury must have been misled as to the offense actually charged in the indictment." Malaga v. United States, 1 Cir., 1932, 57 F.2d 822, 825. The appellants, having been charged in the indictment with the offense prescribed in §§ 331(a), 342(a) (3), could be convicted only of that offense and no other. "The rule that a man shall not be charged with one crime and convicted of another, may sometimes cover real guilt, but its observance is essential to the preservation of innocence." The Hoppet, 1813, 7 Cranch 389, 11 U.S. 389, 393, 3 L.Ed. 380. It follows from this rule, that proof at trial must correspond to the allegations of the pleadings so "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not

be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314.

A judgment will be entered vacating the judgments of the district court, setting aside the verdicts, and remanding the case for further proceedings not inconsistent with this opinion.