UNITED STATES of America

v.

40 CASES, MORE OR LESS, OF Six One-Gallon Cans Article Labeled in Part (Can) PINOCCHIO BRAND 75 PER-CENT CORN, PEANUT OIL AND SOYA BEAN OIL BLENDED WITH 25 PERCENT PURE OLIVE OIL—Packed by A.M.S. Packing Company, New York, —at Syracuse, New York.

Civ. No. 8084.

United States District Court
N. D. New York.

Oct. 19, 1960.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Timothy F. O'Brien, Asst. U. S. Atty., Troy, N. Y., of counsel, for the United States.

Julius Zizmor, New York City, for claimant, A.M.S. Packing Co.

JAMES T. FOLEY, District Judge.

The claimant, A.M.S. Packing Company, moves to dismiss this libel proceeding for seizure and condemnation of the article of food designated in the title pursuant to the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq. The factual situation is a simple one and a precise question of law involving the thrust of this important federal statute into intrastate activity is presented by the challenge of claimant to jurisdiction under the circumstances involved.

The allegations in the libel are very limited as to the improper acts charged against the claimant as violative of particular sections of the Statute. Further restriction of the grounds for seizure and condemnation is made by concession of the government in its supplemental memorandum "that the A.M.S. Packing Company, Inc. caused a number of vegetable oils to be blended together, after those oils had been shipped in interstate commerce, in such a manner that the combination of oils became misbranded." The charge usually made in this type

proceeding that a product might be harmful for human use and consumption because of adulteration or debasement by adding inferior materials or making impure by admixture of inferior material seems to be lacking. The position of the government, as I understand it, is solely to the effect that the blended article manufactured in New York by the claimant company from oils shipped to it from outside the State contained "little or no olive oil" when the label attached to said article processed by blending in the State of New York by the claimant read that contained therein with other material and oils was 25 Percent Pure Olive Oil.

■ The facts are undisputed and clear from the allegations of the libel which in this type motion must be accepted as true. The olive oil component alleged as lacking or insufficient in the finished article "Pinocchio Brand" was imported from Spain, Italy and Tunisia. The gravamen of the charge in the libel by the stated position of the Government is that the article was misbranded while held for sale after shipment in interstate commerce within the meaning of 21 U.S. C.A. § 343(a). There is no question that the blending, manufacture and packing of the interstate components was done at Ozone Park, New York, and the shipment of the goods was between New York City, Syracuse and Utica. It is not contended by the Government that the oils blended in the manufacture were misbranded or adulterated in their separate shipment in interstate commerce to the claimant in New York.

■ It is true that the amendment of 1948 to Section 334(a), 21 U.S.C.A. extending the scope of sale to articles "while held for sale (whether or not the first sale) after shipment in interstate commerce" is a broad and important one to insure protection of the article of food to the ultimate consumer. The notes under the provision in the Code annotated indicate the purpose of the amendment was to make it co-extensive with 21 U.S.C.A. § 331(k), a criminal provision. It is not an easy statute to read and construe. Justice Rutledge,

in his concurring opinion in United States v. Sullivan, 332 U.S. 689, 699, 68 S.Ct. 331, 92 L.Ed. 297, described the Act as long and complicated. Justice Frankfurter, dissenting in the same case, (332 U.S. at page 705, 68 S.Ct. at page 340), in his inimitable style, characterized the scope and meaning of the Statute to "hardly be so clear that he who runs may read, or that even he who reads may read."

The Sullivan case, although it involved a criminal provision, is important in the analysis of this complicated statute as to the scope and application of the *"while held for sale after shipment in interstate commerce"* clause. The apprehension is noted throughout the opinions in that case that unreasonable or extreme applications might be read from it into the food misbranding provisions. Such apprehension is put to rest by the majority in emphasizing that the drugs in question (sulfathiazole tablets) came within the clause by reason of being placed in pill boxes from the bulk delivery by the druggist without the statutorily required directions for use or warnings of danger. In my judgment, the facts in this libel would bring the federal government into an area of discipline and surveillance of intrastate food manufacture and distribution that might lead to the extremes discussed in Sullivan by the Supreme Court. In my judgment, the extension sought by the government in this proceeding is unwarranted, questionable and contrary to our common sense concept of interstate commerce, which is the underlying basis for federal regulation.

Here we have a new product or complete article of intrastate manufacture. No adulteration or misbranding of the components is charged to have existed in interstate commerce. The concession is made that the blending solely within the State resulted only in a misbranding after mixture without any claimed result of adulteration in the blending into the new article. I do not find the situation factually within the sense and purpose of the Statute from its terms or judicial construction.

292

The authorities upon which the Government depends indicate clearly the Statute reasonably and clearly covers adulterated and misbranded components that find their way into articles reprocessed or manufactured into new articles in the State. Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364; Strong, Cobb & Co. v. United States, 6 Cir., 103 F.2d 671; Arner Co. et al. v. United States, 1 Cir., 142 F.2d 730. It is also good reasoning in United States v. Allbrook Freezing & Cold Storage, Inc., 5 Cir., 194 F.2d 937 that the enforcement of the Act would be easily defeated if adulterated constituents of processed products could be seized only when in their unprocessed form. But we do not have such similar facts present here. Persuasive reasoning to support the claimant is found in United States v. An Article or Device Consisting of 31 Units, D.C., 180 F.Supp. 52; Penobscot Poultry Co. v. United States, 1 Cir., 244 F.2d 94. However, the best answer seems to be common sense which Justice Douglas states often makes good law. Peak v. United States, 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631. It is impossible for me to transform this pure intrastate activity into interstate, or connect it reasonably with interstate commerce. Justice Holmes, in Northern Securities Co. v. United States, 193 U.S. 197, 401, 24 S.Ct. 436, 48 L.Ed. 679, stated that when the task of a judge is to interpret and apply the words of a statute, the function is merely academic to begin with,—to read English intelligently,—and a consideration of consequences comes into play, if at all, only when the meaning of the words used is open to reasonable doubt. I see no consequences here of gravity to the citizens of New York because New York has many statutes to reach the evil if it does exist in the labeling of the product. It is a good example where local government is able to act wisely and efficiently in the interests of its citizens and federal intrusion should be restrained. In fairness to the claimant it is noted that there is in its answer to the libel affirmative allegation that the article does contain 25% olive oil as set forth on the label.

The motion to dismiss the libel is granted. Settle order on three days' notice.