**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lawrence Charles PARHMS, Defendant-Appellant.**

**No. 24182.**

United States Court of Appeals,
Ninth Circuit.

April 6, 1970.

Michael Hoff (argued), Seattle, Wash., for defendant-appellant.

William Rubridge (argued), Asst. U. S. Atty., John M. Darrah, Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before MADDEN,* Judge of the United States Court of Claims, and CARTER and TRASK, Circuit Judges.

J. WARREN MADDEN, Judge:

On September 17, 1968, a bank insured by the Federal Deposit Insurance Corporation was robbed in Seattle, Washington. On October 5, the appellant Parhms was arrested in Bryan, Texas. On November 4, he and two other men were indicted for the robbery. Appellant was brought to Seattle, arriving on November 26, and was arraigned the following day, his appointed attorney being present with him at the arraignment. Trial was set for December 9, 1968. Appellant's attorney, on December 5, filed a Motion to Dismiss Indictment and a Motion to Return Property and Suppress Evidences; on December 6, he filed a Motion to Set a New Trial Date, which motion was granted; on December 11, he filed a brief in support of his previously made Motions to Dismiss and to Suppress. These actions of the attorney indicate communication with his client and aggressive representation. He succeeded in having the trial reset for February 10, 1969.

On January 15, and 23, 1969, appellant wrote letters to the Court expressing dissatisfaction with his attorney. On January 30, the Court caused appellant and his co-defendant Ray to be brought into court with their attorneys, to hear them on the subject of their representation. The Court questioned appellant insistently as to the reason or

* Senior Judge, The United States Court of Claims, sitting by designation.

reasons for his dissatisfaction with his attorney, but appellant did not give any intelligible reason. The Court denied appellant's request to dismiss his attorney.

Also on January 30, appellant's attorney wrote a letter and hand-delivered it to appellant requesting the names of any witnesses who might be useful to the defense at the trial.

On February 10, after the jury had been selected, but in the jury's absence, the attorney advised the Court that his client felt that he was not ready to proceed; recounted to the Court the attorney's unsuccessful efforts to obtain from appellant the names of witnesses who might be subpoenaed, and to enlist appellant's assistance in getting other witnesses to come to the trial, although they could not be subpoenaed; told the Court that although he had had extensive discussions with appellant, he had been unable to learn what defense appellant wished to have presented at the trial.

Appellant was then given an opportunity to address the Court, and he complained of not being able to get in touch with desired character witnesses. The Court thereupon obtained from appellant as much information as appellant had about the correct names and last known addresses of the desired witnesses and directed the Government to prepare and serve subpoenas upon them. This was done and several such witnesses gave testimony favorable to appellant at his trial.

At the trial, the four bank employees who were the only persons in the bank when the robbery occurred, identified appellant as the one of the three robbers who first entered the bank. The robber wore no mask and on his entry stated that he was from the Boeing Plant and desired to obtain a loan from the bank. He was thus visible to the witnesses for about two minutes, after which he drew a gun, announced that it was a holdup, and he and a second robber who then entered the bank ordered the four employees to lie down on the floor, faces down. In moving from her chair, to lie down, one of the employees activated a moving picture camera which was located in the ceiling of the bank and it produced a moving picture of the robbery. Several still photographs of frames from that film were identified by the employees of the bank, before the appellant was arrested, as pictures of the first robber.

The appellant refused to participate in a pre-trial line-up which was arranged by the prosecution. When the appellant was testifying at his trial, the Government's attorney questioned him as to his reason for so refusing, thus bringing to the attention of the jury the fact of the refusal. In his argument to the jury the Government's attorney again referred to the refusal. The appellant claims that these references constituted error. The appellant is wrong. The Supreme Court said in United States v. Wade, 388 U.S. 218, 222, 87 S. Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967):

> We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance.

The identification of a person who has committed a crime is of first rate importance to the public. To deprive the prosecution of this potential evidence by refusal to expose one's self to observers who saw the person who committed the crime is a suppression of important evidence and a frustration of the effort to learn the truth. Since a person has, as the Supreme Court has held, no right to refuse to appear in a line-up, one logical inference which may be drawn from his refusal is that he refused because he feared that observers would identify him as the criminal. If that was the reason, his refusal was conduct tending to indicate a feeling of guilt on his part, and therefore evidence of the refusal was admissible, and the prosecutor's comment was permissible as urging the jury to draw a logical and reasonable, though not necessarily cor-

rect, inference. A party can, and this appellant did, in his testimony state what he claimed to have been his reason for his refusal to take part in the line-up, and his counsel can, and did in this case, urge the jury to believe his client's testimony. It was not error for the court to admit the evidence of the refusal, nor for the prosecutor to comment on it.

█ The appellant says that the trial court's "Refusal to appoint effective counsel" was reversible error. Appellant's counsel in the instant appeal, in his brief says, of appellant's trial counsel:

> Kenneth O. Eikenberry is a good lawyer. He has a substantial background in criminal law, and Judge Beeks made a considered choice in his selection.

Appellate counsel has not a word to say in criticism of the way in which trial counsel conducted pre-trial proceedings, and conducted the trial which resulted in the appellant's conviction. He urges only that, when the trial day arrived, the appellant and his counsel were not ready for trial. We have seen hereinabove how difficult trial counsel's task was made by the obstinate and irrational refusal of the appellant to name potential defense witnesses, and to indicate even what the nature of the defense should be. When the trial court, in response to the appellant's request that different counsel be appointed, inquired minutely and insistently into the problem, it was apparent that new counsel would be subject to exactly the same objection as counsel who had already, with skill and diligence, done everything which could have been done to prepare for trial. The reason was that the appellant presented no intelligible objection at all to his present counsel, who had been carefully selected by the Court. The appellant did not suggest any particular lawyer as his requested new counsel. If the court had appointed new counsel, and, after postponement of the trial for new counsel to prepare, appellant had requested another substitution

of counsel, appellant could have given exactly as valid a reason for that change, viz, no reason at all, as he gave for the change that was refused, which refusal is the subject of appellant's assertion of error.

The trial court's treatment of the unusual situation which confronted the court was correct. We further observe that we are unable to discover any indication that if new counsel had been appointed by the Court, and if appellant had abandoned his obstinate refusal to cooperate with counsel in the preparation of his defense, the trial and its outcome would have been in any essential respect different from what it was. The appellant had a full and fair trial, in spite of the difficulties which he had caused for his trial counsel.

In the trial of the appellant and his co-defendant, one Ray, prosecution witwitnesses, testifying as to their identification of the defendants, were shown still photographs made from frames of the motion picture film of the robbery, some of the facts about which we have recited earlier in this opinion. There were other photographs, not taken from the motion picture of the robbery. There was at least one picture of the defendant Ray which had been obtained from the Federal Bureau of Investigation's files. There was a sheet reproduced on letter size paper and distributed by the Washington Bankers Association to its members, picturing the three suspected robbers of the bank involved in this case. The "flyer" named the three men photographed. It was distributed for the purpose of enabling any bank in which these suspects might attempt to place valuables in a safe deposit box, to alert the proper authorities.

In the cross-examination of Mr. Rees, one of the prosecution witnesses, counsel for the appellant's co-defendant Ray, in cross-examining Rees about his identification of Ray, asked "Now, you were shown some police photographs, were you not?" The answer was "yes, I was". Further questions brought out that "these photographs" were brought

into the bank by "one of the FBI Agents". Still further questions by the cross-examiner, and the answers thereto were: Q "Did you make some identification on the basis of those photographs?" A "Yes, I did." Q "and who did you identify in the photographs?" A "I identified Mr. Parhms." The fact was that the appellant Parhms had never had any problems with the police, and that there was, among the photographs supplied by the FBI, no mug shot type of picture of Parhms. Yet counsel for the appellant Parhms raised no question about the possibly misleading impression which the foregoing exchange might have made upon the jury regarding the character of his client. The exchange must have had the effect of putting the appellant's counsel on guard as to the possible perils to his client in this area of the evidence.

When appellant's counsel cross-examined this same witness, he asked him whether the pictures in the bank's flyer which we have described above, had been made from the frames of the motion picture taken at the bank during the robbery. The witness answered "No". Then the following exchange occurred:

Q  All right. How do you know?

A  Well, one of the films, one of the pictures, was a mug shot, a straight on mug shot with a name and numbers across the bottom.

Q  Something other than what was in this film?

A  Yes.

MR. EIKENBERRY (appellant's counsel): I think I must at this time move for a mistrial, your Honor.

THE COURT: I will hear you at the side bar.

(The following proceedings were had in a sotto voce side bar conference)

THE COURT: Make your motion and state your reasons.

MR. EIKENBERRY: I am moving for a mistrial on the grounds that he

used the words "mug shot", and I submit that this is an appropriate motion. In any criminal case the witnesses should be instructed ahead of time to avoid any words that would indicate that the defendants have a prior criminal record. This is such a common occurrence I don't think it should be incumbent upon the defense counsel in cross-examining to warn the person ahead of time or couch his questions to avoid use of these words "mug shots".

THE COURT: You brought it out, you invited it. You made a special effort to show that it was from pictures other than on this film. Motion denied.

■ We think the motion for a mistrial was properly denied. From the earlier questioning of this same witness by other counsel, which we have described earlier in this opinion, it is apparent that this area of the evidence was not unknown ground to defendant's counsel. A truthful answer to his specific question had to be the answer that he got. The distinction between "police photographs" and "mug shots" is, in the circumstances, of no significance. Further, any imagined error was harmless beyond a reasonable doubt. The photographs were in evidence and it would be obvious to the jury that no photograph of Parhms was a mug shot. The incident of which appellant complains gave counsel a good reason to stress, in his argument to the jury, the important fact that his client had no previous criminal record whatever.

■■ In this appeal error is asserted with regard to the alleged failure of the prosecution to furnish the appellant certain notes made shortly after the robbery by witnesses who, at the trial, identified the appellant as one of the robbers. The record shows that rough notes made by the witness Brown were turned over to a member of the police force of the City of Renton, Washington and never got into the Government's possession; that the statements made by the witnesses Brown, Rees and Lyon to

the FBI were "incorporated into" the FBI reports, and that copies of those statements were furnished by the FBI to appellant's counsel and were examined by him. Since the copies of the full FBI reports were furnished to counsel, we see no merit in present counsel's complaint that the Trial Court should have examined those reports in camera.

The appellant urges that the use of photographs to identify him was, in the circumstances prejudicial. Four of the photographs are blow-ups of single frames from the moving picture of the robbery. These were shown to the witnesses a few days after the robbery, that is, after they had actually seen the robber at close range for some minutes. The appellant says the moving picture is not of good qualify. The Government says it is of good quality. In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) the court said:

> Instead, we hold that each case must be considered on its own facts, and that conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

It was a jury question whether the jurors could see in the photographs a likeness of the man who was before them at the trial.

■ In addition to the photographs made from the moving picture film, there was the enlarged portrait of the appellant on the flyer distributed by the Washington Bankers Association, a copy of which was posted in the robbed bank and seen by the employees who were later to be witnesses at the trial. Their seeing that picture, and later seeing the appellant at the trial would not be a circumstance tending to cause misidentification.

It was not error to permit the photographs to be used to identify the appellant.

The evidence was adequate to take the case to the jury and to support its verdict. The judgment is affirmed.