UNITED STATES of America,
Appellee,

v.

Leslie HIGUCHI, Appellant.

No. 25738.

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1971.

Rehearing Denied Feb. 15, 1971.

Peter Keane (argued), San Francisco, Cal., for appellant.

Joseph M. Gedan (argued), Asst. U. S. Atty., Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, for appellee.

Before HAMLEY, HAMLIN and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was indicted, tried by a jury and convicted on two counts of violations of 18 U.S.C. § 2314 for knowingly and fraudulently transporting forged checks in interstate commerce.

### Factual Summary

Most of the facts are admitted. The following is a fair summary of what occurred. On January 20, 1969, the appellant, using the alias George Zane, opened a savings account of $1,000.00 in a Honolulu bank. The following day, he returned to the bank and deposited to that account three checks totaling $38,-

000.00. A $7,000.00 check was drawn on another local bank, while the other two checks, in amounts of $11,000.00 and $20,000.00, were drawn on the Bank of America in La Mirada, California on the account of one Robert W. Wolfe. Both of these checks were made payable to George Zane, and were endorsed by appellant under that name.

The next day, appellant again returned to the bank; and attempted to transfer the money from his savings account to a checking account. The bank refused to make the transfer.

On January 24th, appellant attempted to withdraw the original $1,000.00 used to open the savings account. The bank employees, having become suspicious, asked him to wait, during which time the FBI was called. An FBI agent soon arrived and interviewed the appellant, after first advising him of his rights and giving him an "Advise of Rights" form. Appellant read the form and acknowledged that he understood it, but declined to sign it. Shortly thereafter, he made certain statements to the agent which the agent repeated in his testimony at the trial. Appellant made no objection to the reception in evidence of these remarks.

Of the three checks deposited by appellant on January 21, 1969, the local bank check was returned marked "account closed", while the two checks drawn on the account of Robert W. Wolfe at the La Mirada bank were returned marked "forgeries."

Appellant took the witness stand and testified in his own behalf. He said that he won the checks in a dice game and did not know they were forged, and that he used the name of George Zane so that his funds could not be reached by creditors or by the Internal Revenue Service. He used aliases on earlier occasions, he said, to foil other creditors and to avoid detection by the Honolulu Vice Squad for gambling violations.

### Contentions

Appellant's principal contention is that, by refusing to sign the "Advise of Rights" form, he did not waive his right to remain silent under the doctrine taught in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Accordingly, he maintains that his statements made to the agent without advice of counsel should not have been received in evidence.

Assuming, without deciding, that this was a "custodial interrogation" of appellant within the ambit of Miranda, and that appellant did not waive his Miranda rights, we hold on the record before us that the reception in evidence of such testimony was not "plain error" within the meaning of Rule 52, F.R. Crim.P, but was harmless beyond a reasonable doubt under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Again, we emphasize that appellant did not object to this testimony at the trial. In fact, it would seem that he was inviting the FBI officer to testify and then attempting to use the officer's testimony to substantiate his own. In contrast to Miranda, where there was a full confession of the commission of a crime, the appellant's statements to the officer in the instant case, if true, tended to absolve the appellant of all criminal participation. During his initial interrogation at the bank and as a witness at the trial, appellant claimed he was completely innocent of any criminal intent and had no knowledge of the fact that the checks were forged. A complete analysis of the record convinces us that appellant and his trial attorney welcomed the officer's testimony relating appellant's exculpatory statements and actually used such testimony to buttress the appellant's defense.

Another major point raised by appellant is that he was tried and convicted on the basis of evidence of other crimes and misconduct not included in the indictment. True enough, under ordinary circumstances, a prosecutor is not justified in developing on cross-ex-

amination the fact that an accused previously used assumed names. Here, however, appellant on direct examination, in an attempt to justify his use of an alias on this occasion, said that he utilized fictitious names on many occasions, principally to avoid creditors and the Internal Revenue Service. Inasmuch as appellant's only defense was that he did not intentionally pass the forged instruments, the cross-examination was proper to show knowledge, intent and a pattern of conduct. Suhl v. United States, 390 F.2d 547 (9th Cir. 1968); United States v. Roselli, 432 F.2d 879 (9th Cir. 1970). Moreover, the trial judge, in no uncertain terms, directed the jury to disregard the inappropriate questions asked by the prosecutor.

Next, appellant complains of references in the testimony which allegedly associated him with a "mysterious criminal figure" named "Tsuji." Appellant's argument that these references to this "cryptic character" may have unfairly influenced the jury is not persuasive. The name was first mentioned by a government witness upon cross-examination by the appellant. A party may not complain about the introduction of a collateral issue for which he himself was responsible. United States v. Parhms, 424 F.2d 152 (9th Cir. 1970). Additionally, nothing in the record indicates that appellant actually was connected with "Tsuji", or that the use of the name could in any way affect the verdict. The judge's instruction on the subject, although somewhat ambiguous in part, nonetheless clearly indicated that appellant was not on trial for anything that "someone by the name of Tsuji may or may not have done."

Finally, appellant's contentions that the court did not adequately instruct the jury on the meaning of certain words and abused its discretion in permitting the prosecution to use an overhead projector as a visual aid during final arguments, are completely without merit.

Affirmed.