Richard Kenichi **KANESHIRO**, a.k.a.
Richard Higa, and George Ekita,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 26273.

United States Court of Appeals,
Ninth Circuit.

June 1, 1971.

Rehearing Denied Aug. 10, 1971.

Yoshio Shigezawa (appeared), Wallace S. Fujiyama, Honolulu, Hawaii, for appellant.

Joseph M. Gedan, Asst. U. S. Atty., (appeared), Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, for appellee.

Before KOELSCH, CARTER and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants were indicted, tried by a jury and convicted of transporting firearms in foreign commerce without a license and of conspiracy to transport firearms in foreign commerce without a

license, both in violation of 15 U.S.C. § 902(a). They appeal. We affirm.

### Factual Background

Appellant Kaneshiro was employed as a baggage and cargo handler for Pan American Airways. In May, 1967, in Tokyo, Japan, he and an acquaintance, Nyuk Lin Loo, entered into a joint venture with a Tokyo resident, Townsend, to ship guns from Hawaii to Japan and there sell them. Upon returning to Honolulu, Kaneshiro obtained six or seven new pistols, put them in a suitcase, and contacted Raymond Tom, the cargo supervisor for Pan American. Kaneshiro told Tom that the suitcase was excess baggage belonging to Loo, and asked Tom's help in shipping the suitcase to Tokyo in the near future. The ostensible purpose behind seeking Tom's assistance was to help Loo avoid paying an excess baggage charge. Tom agreed to ship the suitcase, provided it did not contain any contraband. Kaneshiro assured him it did not.

In early June, 1967, Kaneshiro, Loo and another man, identified by Tom as appellant Ekita, met Tom at the airport to discuss plans for the shipment of the suitcase. After this meeting, Ekita went to Tokyo where he contacted Townsend to prepare for marketing the pistols. During this time Kaneshiro was completing arrangements for the shipment.

On June 13, 1967, Kaneshiro told Tom that he had Loo's suitcase, together with two cases of pineapples, ready to go. Tom placed the suitcase and pineapples on a Pan Am flight to Tokyo, and Loo departed for Tokyo on a different flight. The suitcase arrived as planned, and was unloaded by Chujo, another Pan Am cargo handler, whom Tom had contacted. The guns were then picked up by Ekita, Loo and Townsend, who began looking for buyers. One pistol was sold to a person named Tanaka, and, after much difficulty, arrangements were made to sell the remaining guns to a person named Okaji. Before the sale was consummated, however, all parties were arrested by the Tokyo police. In Honolulu, Tom learned of the arrest, and asked Kaneshiro if the suitcase had contained guns. Kaneshiro replied in the affirmative, and said that a taxi driver was going to "take the rap." Kaneshiro was eventually arrested, and he and Ekita were charged as co-defendants with the offenses set forth in the indictment. Loo died prior to the trial.

### Issues

Although appellants raise a multiplicity of issues, only the following questions merit discussion: (1) the sufficiency of the indictment; (2) the sufficiency of the evidence; (3) the adequacy of the court's instructions; (4) the receipt in evidence of certain statements made by appellants; (5) the admission into evidence of an extrajudicial written statement given by Tom to a customs agent; (6) the trial court's refusal to grant a mistrial; and (7) the trial court's refusal to give a "cautionary" instruction requested by appellants.

(1) Appellants were charged with violating 15 U.S.C. § 902(a), which makes it a crime "* * * for any manufacturer or dealer, except a manufacturer or dealer having a license issued under the provisions of this chapter, to transport, ship, or receive any firearm or ammunition in interstate or foreign commerce." Count I of the indictment charged that appellants "* * * willfully and knowingly did transport and cause to be transported in foreign commerce from * * * Hawaii to Tokyo * * *" certain firearms without a license; Count II charged that appellants conspired with Loo to commit the above crime.

Relying primarily on Carlson v. United States, 296 F.2d 909 (9th Cir. 1961), appellants claim that the indictment failed to charge a crime because it omitted an essential element of the offense proscribed by § 902(a), namely, that appellants were "manufacturers" or "dealers" within the meaning of that section. In Carlson, an amended information charged the defendant with willfully

giving false information to an airline stewardess concerning an attempt to place explosives on a commercial aircraft. The information failed to include an essential element of the offense charged, i.e., that the defendant told the stewardess that the explosives had been placed with intent to damage or destroy the plane. This court held that the information failed to charge a crime, and reversed the conviction.

*Carlson* is distinguishable from the instant case in two important respects. There, there was no reference in the body of the information to the statute allegedly violated, but only a marginal notation.[1] Here, each count directly charged appellants with a "violation of § 902(a) of Title 15, United States Code." Hence, the appellants, unlike the defendant in *Carlson*, were fully apprised of the nature of the charges against them. Secondly, counsel for appellants had an excellent chance to call the trial court's attention to the alleged defect in the indictment at the time he was discussing with the court and the prosecutor the instructions to be given. Not only did counsel fail to object to the defect, but the record shows that he affirmatively assisted in preparing the instruction on the essential elements of the crimes and made no attempt to include a definition of the term "dealer" or "manufacturer" in the instruction. There was no such record before the court in *Carlson*.

While the indictment in our case is obviously an example of poor draftsmanship, we do not think it is fatally defective. The indictment is here being challenged for the first time. This fact alone does not preclude our consideration of its sufficiency, Carlson v. United States, *supra,* but under these circumstances the standard for sufficiency is " * * * that the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 420, 76 L.Ed. 861 (1932); Ramirez v.

United States, 318 F.2d 155, 157 (9th Cir. 1963). Here, the indictment alleged that the firearms were unlawfully transported "in foreign commerce." The phrase "interstate or foreign commerce" is defined in 15 U.S.C. § 901(2), to mean "* * * commerce between any State, Territory or possession (not including the Canal Zone), or the District of Columbia, and any place outside thereof. * * *" Commerce, in turn, has been defined as "* * * trade: business in which persons [have] bought and sold, bargained and contracted." United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 539, 64 S. Ct. 1162, 1166, 88 L.Ed. 1440 (1944). A dealer is defined in 15 U.S.C. § 901(5) as "* * * any person engaged in the business of selling firearms or ammunition. * * *" Thus, the phrase "in foreign commerce" suggests that the transaction was a business venture which necessarily involved a dealer. Moreover, the appellants were in no way prejudiced by the inartful wording of the indictment. As mentioned above, both counts contained express allegations charging violations of the statute. On such a record, the missing statutory elements could properly be implied. Ramirez v. United States, *supra*; Stein v. United States, 313 F.2d 518 (9th Cir. 1962).

(2) Next, appellants contend that there was no evidence, outside of the single shipment of guns to Tokyo, from which the jury could reasonably have inferred that either of them was a dealer. An isolated transaction, while not in itself a business, is, nevertheless, evidence to be considered in determining whether the seller is engaged in a business. Bush v. United States, 218 F.2d 223 (10th Cir. 1954); Supreme Malt Products Co. v. United States, 153 F.2d 5 (1st Cir. 1946). In the instant case, the shipment of guns to Tokyo, the activity of Ekita, Loo and Townsend in procuring, with Kaneshiro's knowledge and approval, possible buyers for the

---

1. An examination of the information reveals this fact.

guns, and the fact that the guns were sold in two separate installments to two different people, is ample evidence to support a finding that appellants were "engaged in the business of selling firearms" and were to that extent dealers under § 901(5).

■ (3) Directly related to the foregoing is appellants' claim that the trial court erred in its instructions in failing to define the term "dealer" or to inform the jury that § 902(a) is applicable only to dealers or manufacturers of firearms. At the outset, we note that the trial judge prefaced his instruction by reading the entire section to the jury. More importantly, we emphasize that the attacked instruction not only was not objected to at the trial, but indeed was given as revised by the appellants themselves. On these facts, Rule 30, F.R.Crim.P., precludes appellants from attacking an instruction which they helped compose.[2] The giving of the instruction was not, as appellants urge, plain error under Herzog v. United States, 235 F.2d 664 (9th Cir. 1956), cert. denied 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956).

(4) At the trial, Tom testified that Kaneshiro had admitted to him that the suitcase contained pistols, and a customs agent, Piper, was permitted to relate a statement made to him by Ekita during interrogation in a customs search that he, Ekita, had been present at the airport meeting with Kaneshiro, Loo and Tom. Appellants argue that these "admissions" were not supported by substantial independent corroboration showing a corpus delicti, and thus it was reversible error to admit them into evidence.

■■ The purpose behind the general rule that an accused may not be convicted on his own uncorroborated confession is "* * * to prevent 'errors in convic-

tions based upon untrue confessions alone,' * * *" Smith v. United States, 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). The corroboration requirement applies to mere admissions when "* * * the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case." Id. at 155, 75 S.Ct. at 198. The Court added, by way of a footnote, that "[a]dmissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated." Id. n. 3, 75 S.Ct. 198.

■ Keeping the Smith guidelines in mind, we hold that the statements made by the appellants were not of the type requiring independent corroboration of corpus delicti to be admissible. Kaneshiro's remark that the suitcase contained guns was made, not to an official, but to Tom, an unwitting accomplice, thereby providing "a strong inference of reliability." Ekita's statement was made to a customs agent, but, in view of the extensive nature of Ekita's proven participation in the crime, the admission, if such it can be called, did not "embrace an element vital to the Government's case." In any event, we think that there was evidence, independent of the appellants' statements, sufficient to show that an offense had been committed. Additionally, the fact of the movement of the pistols in foreign commerce is established beyond doubt by the inscriptions in the metal on each of the gun handles.[3] Obviously, the pistols could not be manufactured in Connecticut and be found in Japan without having moved in foreign commerce. That appellants had no license as required by § 902(a) is undisputed.

■ Closely connected to the above issue is Ekita's contention that his

---

**2.** "No party may assign as error any portion of the charge *or omission therefrom* unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

**3.** "Colt TTPT
S. A. Manufacturing Company
Hartford, Connecticut USA"

statement to Agent Piper should not have been admitted because it was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). One of the warnings required by *Miranda* is that the suspect shall be informed of his right to have an attorney appointed for him in the event the suspect is indigent. *Id.* at 473, 86 S.Ct. 1602, 16 L.Ed.2d 694. Ekita was not informed of this right before Piper commenced interrogating him. Assuming, without deciding, that Ekita's statement should not have been received in evidence, we hold that, in view of the abundance of other evidence implicating Ekita as a member of the conspiracy, any possible error in admitting the statement was harmless beyond a reasonable doubt under the teaching of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). See United States v. Higuchi, 437 F.2d 835, 837 (9th Cir. 1971).

■ (5) Here, appellants object to the court's receiving into evidence, at the Government's request and over objection by the defense, an extrajudicial written statement made by Tom to Agent Piper after appellants had been arrested. The statement was actually a transcribed interview consisting of questions by Piper and answers by Tom. Appellants maintain that the introduction of the transcript violated the rule of evidence that prior consistent statements cannot be used to support one's own unimpeached witness.

■ While appellants have correctly stated the general rule, Johnson v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803, 805–806 (1965); 4 Wigmore, Evidence § 1124 (3d ed. 1940), such a rule is not controlling in the instant case. "Where a cross-examiner has endeavored to discredit a witness by prior inconsistent statements, it is sometimes permissible to offset the damage by showing prior consistent utterances." Schoppel v. United States, 270 F.2d 413, 417 (4th Cir. 1959). That is essentially the situation here. Before Tom's written statement had been introduced or received in evidence, defense counsel extensively attacked the statement and, in an unfair attempt to ferret out inconsistencies where none existed, repeatedly asked Tom about certain answers given by Tom during the interview without pinpointing the specific questions to which Tom was responding. On the record before us, we see no valid reason why appellants should be allowed to argue that the court erred in admitting the very statement which they themselves so roundly attacked. For that matter, the trial judge was correct in saying that he had no choice but to admit the statement, as it was the only way in which the prejudicial effect of defense counsel's conduct could be neutralized.[4] A trial judge has a broad discretion in such matters. *Cf.* Goings v. United States, 377 F.2d 753, 762 (8th Cir. 1967). On these facts, we cannot say there was an abuse of that discretion, and even if there was, it was harmless under Rule 52(a), F.R.Crim.P.

4. "The Court: * * *

And, in this Court's own observation and this Court's view, he [defense counsel] has misconstrued many of the statements of the witness and attempted to indicate an impression of inconsistency where none existed. I don't think I can cure that without letting the document going (sic) into evidence. It has nothing new; it was completely covered. The only reason it could be brought up would be to argue.

And, because of the misleading, as I see it, impressions given by the questions of counsel, I believe that the Government's offer is well taken. Ordinarily, I

wouldn't allow it in evidence, but it's the same thing that has been going over and over again. It has been hammered and hammered and hammered and hammered, and, because of that, I think it's better to let the jury have the statement and then see if the arguments of counsel about whether he did or didn't make a misstatement by those words are true, rather than leaving it to argument as to what he said in the statement when the statement isn't before the jury.

So I will permit it in evidence. You may have a continuing objection to it." [R.T. 303.]

(6) On two occasions, the trial judge refused to grant appellants' motions for a mistrial. The first motion came after Agent Piper had stated that Ekita was known to be involved in the local underworld; the second came after the Japanese Police Inspector who had seized the pistols testified that the guns "were smuggled into Japan illegally." Appellants now maintain that the court erred in denying these motions. Both of the answers objected to came in response to pointed questions asked by defense counsel. The motions for a mistrial were, therefore, properly denied. United States v. Parhms, 424 F.2d 152, 156 (9th Cir. 1970), cert. denied 400 U. S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83. In addition, the Police Inspector's remark was stricken from the record at defense counsel's request.

(7) Finally, appellants assign error to the trial court's refusal to give their requested instruction that Tom's "uncertain" identification of Ekita as one of the principals at the airport meeting should be viewed with caution. The requested instruction was essentially an order to the jury to acquit Ekita if there was reasonable doubt as to Tom's identification of him at the airport. Such an instruction failed to take into account the numerous other overt acts linking Ekita to the conspiracy. There was no error in failing to give this instruction.

Other contentions urged by the appellants have been thoroughly considered and found to be without merit.

Finding no error, we affirm.

### ON PETITION FOR REHEARING
#### ORDER

Appellants cite The Hoppet, 7 Cranch 389, 11 U.S. 389, 3 L.Ed. 380 (1813) and Alabama Packing Co. v. United States, 167 F.2d 179 (5th Cir. 1948), in support of their request for a rehearing. *The Hoppet* involved the sufficiency of a pleading in Admiralty when viewed in the light of strict common law pleading. Moreover, sufficiency of the pleading was there raised in the trial court and the case decided long prior to the enactment of liberalized rules of practice and procedure, such as FRCrimP and FR CivP. In *Alabama Packing Co.*, the appellant not only timely moved to dismiss the information for insufficiency, but throughout the trial maintained and preserved that position. That is a far cry from what is disclosed by the record before us.

The petition for rehearing is denied.