UNITED STATES of America,
Plaintiff-Appellee,

v.

Elmer Paul PITMAN, Defendant-
Appellant.

No. 72–1387.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1973.

As Amended on Denial of Rehearing
May 2, 1973.

Rehearing and Rehearing En Banc
Denied May 17, 1973.

Ron Bain (argued), Los Angeles, Cal., for defendant-appellant.

Joseph Golant, Asst. U. S. Atty. (argued), Richard J. Trattner, Eric A. Nobles, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, BROWNING and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

After a five-day trial, the jury found Pitman guilty of one count of theft from an interstate shipment of freight. 18 U.S.C. § 659. Pitman raises many questions on appeal, some of which require no answer and none of which require reversal.

Pitman was a truck driver for a company which picked up shipments of cartons from the distribution center of Avon Products, Inc., in Monrovia, California, for transfer and delivery. On November 10, 1970, Pitman signed a bill of lading which indicated that he had received a shipment of 65 cartons consigned to Andrews' Trucking Service in Hilo, Hawaii. That shipment included two cartons addressed to Mrs. K. Sakamoto of Laupahoehoe, Hawaii. When the shipment was delivered to Continental Airlines at the Los Angeles airport, four cartons were missing. Mrs. Sakamoto ultimately received only one of her two cartons.[1] Pitman was convicted on the count which charged him with the theft of Mrs. Sakamoto's missing carton.

■ Pitman challenges the sufficiency of the evidence to sustain his conviction. In addition to the facts already stated, an F.B.I. agent related that Pitman admitted his participation with Laard Bell, another company driver, in a scheme to steal cartons from the Avon shipments. He was involved in this plan for about one year and stated that he stole goods on two occasions during November of 1970, the last of which occurred on November 9th or 10th. Taken in a light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence was clearly sufficient to sustain the verdict.

■ Pitman also argues that his confession was inadmissible because it was obtained in violation of his constitutional rights and because it was not sufficiently corroborated. The record indicates that the F.B.I. agents gave Pitman a full explanation of his constitutional rights before the questioning began. There is ample evidence of the voluntariness of his confession. As Pitman never specifically admitted the crime involved here to the F.B.I. agent, it is questionable whether this is a confession which required corroboration. To the extent that Pitman admitted other instances of theft, those admissions were evidence of a common plan or scheme, were not elements vital to this case, and hence did not require corroboration. *See* Smith v. United States, 348 U.S. 147, 155, 75 S.Ct. 194, 99 L.Ed. 192 (1954). To the extent that the jury may have believed that Pitman admitted this specific crime, there was sufficient corroboration to show that his admissions were trustworthy. Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158,

---

1. Appellant stresses the fact that the intermediate consignee, Andrews', indicated by invoice that the entire shipment had been received in Hilo. The jury could reasonably resolve the inconsistency between the reported shortages at Los Angeles and Laupahoehoe and the Hilo invoice in favor of the government. Apparently it chose to do so.

99 L.Ed. 101 (1954). The cartons were reported missing soon after they were in Pitman's exclusive control.

Additionally, Pitman complains of several evidentiary rulings. First he argues that the trial court erred in admitting the government's Exhibit 3–D. When an Avon sales representative, such as Mrs. Sakamoto, reports a lost order valued in excess of $25, Avon's Pasadena office prepares a lost order tracer. Exhibit 3–D was such a report that one of Mrs. Sakamoto's cartons had not reached her. The tracer also bears the phrase "reported short." This notation was entered by a clerk at the Monrovia office whose job involved the tracing of the lost orders. Andrews' Trucking Service in Hilo had reported the shortage to her.

■ Pitman contends that these recorded reports from Mrs. Sakamoto and Andrews' Trucking Service, though memorialized by Avon, are double hearsay and inadmissible despite the first step hearsay exception afforded for business records. 28 U.S.C. § 1732. However, the second step of hearsay is also admissible when the entry is ". . . made by an authorized person, to record information known to him or supplied by another authorized person." Standard Oil Company of California v. Moore, 251 F.2d 188, 214 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S. Ct. 1139, 2 L.Ed.2d 1148 (1958); see also LaPorte v. United States, 300 F.2d 878, 882 (9th Cir. 1962); Olender v. United States, 210 F.2d 795, 801 (9th Cir. 1954); United States v. Grayson, 166 F.2d 863, 869 (2d Cir. 1948).

Consequently the admissibility of the lost order tracer prepared at the Pasadena office from Mrs. Sakamoto's report depends upon whether she was an authorized person within Avon's business. The resolution of this inquiry turns upon the uniqueness of Avon's operations. Avon manufactures and distributes its products to its own independent sales representatives. The sales representative, as Mrs. Sakamoto, is essentially a retail outlet for Avon's products. Mrs. Sakamoto places her orders for cosmetics or toilet goods with Avon's Pasadena office, and the goods are shipped to her from the Monrovia plant. Upon receipt, as a representative of Avon only, she sells and delivers them to her customers.

■ Thus a sales representative is an integral part of the Avon organization, and consequently Mrs. Sakamoto is not an outsider but rather an authorized person within the meaning of Standard Oil. Therefore, the lost order tracer embodying her report that one of her cartons was missing was admissible under § 1732.

■ The notation "reported short" was a result of the report of Andrews' Trucking to Avon. However, it is unnecessary to decide whether that company was also an authorized agent. Since this notation was on the same form as the other, at worst, it was cumulative of the admissible evidence and the record reflects no prejudice to Pitman. See Bailey v. United States, 282 F.2d 421, 426 (9th Cir. 1960), cert. denied, 365 U. S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961).

Pitman's second asserted evidentiary error involved the admission of certain rebuttal evidence. During cross-examination, the prosecutor asked Pitman whether he had told the F.B.I. agents that, on at least five occasions, he had aided a man named Bob in carton thefts from Avon. There was no objection, and Pitman denied that he had made the statement. After the defense rested, the government called an F.B.I. agent in rebuttal. Over objection, the agent testified that Pitman had admitted to him his participation with Bob in the thefts. The trial judge then instructed the jury that the evidence had been admitted for impeachment purposes only.[2]

2. The question asked in rebuttal was not proper for impeachment. Instead of asking the F.B.I. agent the leading question of whether Pitman had said to him substantially what Pitman earlier denied, the question was "Will you tell us what he

Pitman contends that the admission of this evidence was error because it constituted an attempt to impeach him on a collateral matter. Pitman is incorrect. The proper test of collateralness is: *"Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?"* 3A Wigmore, Evidence § 1003, at 961 (Chadbourn rev. 1970).[3] In this case, the fact shown was Pitman's admission of participation in other thefts at the Avon plant. Independent of the impeachment, this evidence would have been admissible if relevant and not against public policy. Character evidence to prove conduct in conformity with it is always relevant but ordinarily excluded. However, evidence of prior similar criminal acts may be admissible to prove motive, common plan, scheme, or conspiracy. United States v. Jones, 425 F.2d 1048, 1051 (9th Cir.), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed. 2d 51 (1970); United States v. Jiminez-Robles, 415 F.2d 308, 310 (9th Cir. 1969). In this case, Pitman was charged with the theft of a carton of Avon products delivered to his truck at the Monrovia plant. He admitted to the F.B.I. agent using his truck to assist Bob in a series of thefts from the same plant. The similarity is sufficient, and the evidence could have been admitted during the case-in-chief. Consequently it was not collateral.

We note that the trial judge gave an instruction limiting the use of this evidence to impeachment. Additionally, because this was evidence of prior similar acts, Pitman might have

requested a limiting instruction concerning the probative use of the evidence.[4] However, he did not, and thus the only question in this regard is whether the failure to so instruct was plain error. Fed.R.Crim.P. 52(b). We hold that it was not. *See* DeCarlo v. United States, 422 F.2d 237, 239 (9th Cir. 1970); United States v. Johnson, 415 F.2d 653, 655 (9th Cir. 1969), cert. denied, 396 U. S. 1019, 90 S.Ct. 588, 24 L.Ed.2d 511 (1970).

Affirmed.

---

told you with regard to this dock worker named Bob?", which produced a narrative account far exceeding the limited question asked Pitman. However, that error was not preserved because the defense objected only to the question as being collateral.

3. *See* Attorney General v. Hitchcock, 1 Exch. 91, 99 (1847); Smallfield v. Home Ins. Co., 244 F.2d 337, 341 (9th Cir. 1957); Shanahan v. Southern Pac. Co.,

188 F.2d 564, 568 (9th Cir. 1951); Dillard v. United States, 141 F. 303, 310 (9th Cir. 1905).

4. On direct, F.B.I. Agent Williams testified that Pitman had admitted systematic thefts from Avon over a one-year period and particular thefts at a Union Pacific yard and an Enco weighing station. The defense also made no request for an instruction limiting the use of this evidence.