UNITED STATES of America, Plaintiff,

v.

James David "J. D." NORTHRUP et al., Defendants.

No. CR–LV–79–41, HEC.

United States District Court,
D. Nevada.

Jan. 10, 1980.

Geoffrey A. Anderson, Las Vegas Strike Force, Las Vegas, Nev., for plaintiff.

Howard M. Miller, Las Vegas, Nev., for defendant James David "J. D." Northrup.

## DECISION

CLAIBORNE, District Judge.

The within action is before the Court on the Motion for Judgment of Acquittal pursuant to F.R.Cr.P. Rule 29(c) or, in the Alternative, Motion for New Trial pursuant to F.R.Cr.P. Rule 33, filed on behalf of Defendant James Davis "J. D." Northrup.

I

The motion to acquit is before the Court by reason of this procedural posture: On April 17, 1979, the Federal Grand Jury indicted Defendants Northrup, Wilch, Harry Blasey, and Richard Blasey on violations of 18 U.S.C. §§ 1962(c) and (d), and indicted Defendant Schmoutey on violations of 18 U.S.C. §§ 1962(c), 1962(d), 1623, and 29 U.S.C. § 501(c). The matter went to trial as to all of the indicted Defendants, save and except indicted Defendants Gramby Hanley and Thomas Hanley, and at the close of the Government's case-in-chief each of the aforementioned five Defendants entertained Motions for Judgment of Acquittal pursuant to F.R.Cr.P. Rule 29(a) as to all pertinent counts. On November 20, 1979, this Court granted the Rule 29(a) motions in

their entirety as to Defendants Schmoutey, Wilch, Harry Blasey and Richard Blasey, and denied Defendant Northrup's Rule 29(a) motion in its entirety. Thereafter, Defendant Northrup presented a defense and his case was submitted to the jury. On November 21, 1979, the jury found Northrup not guilty as to Count I of the indictment (18 U.S.C. § 1962(c)—Conduct of the affairs of a labor union through a pattern of racketeering activity) and guilty as to Count II (18 U.S.C. § 1962(d)—Conspiracy to violate Section 1962(c)).

On a motion under Rule 29(c), the Court must approach the evidence from the standpoint most favorable to the government. 2 Wright, Federal Practice and Procedure, § 465 at 251. If the evidence is such that a reasonable jury-person must necessarily have reasonable doubts about the defendant's guilt, the Court must then grant the motion. But if there is relevant evidence from which the jury could find or infer, beyond a reasonable doubt, that the accused is guilty, the Court must then deny the motion. Likewise, if the Court concludes that either reasonable doubt or no reasonable doubt is possible, I must then defer to the jury's verdict. See 2 Wright, *Id.*, § 467 at 254–257.

Count II of the indictment charges Northrup, along with various other indicted and unindicted co-conspirators, of conspiring to conduct and participate in the conduct of the affairs of Culinary Union Local 226 through a pattern of racketeering activity through, inter alia, arson of buildings and structures and attempted arson of personal property. Count II, ¶ 6 states that it was a further part of said conspiracy that Northrup, among others, would assist and aid Gramby Andrew Hanley in transporting explosive and incendiary devices and in concealing, planting and detonating explosive and incendiary devices. Count II, ¶ 7 states that it was a further part of said conspiracy that Thomas Burke Hanley and Gramby Andrew Hanley would pay and remunerate Northrup, among others, for their services from monies obtained from Local 226. Simply stated, the Government's theory of the case as to Northrup was: that a

conspiracy existed to exert the superiority of Culinary Union Local 226 by firebombing various restaurants within its jurisdiction that did not recognize Local 226 as the bargaining agent for its employees; the conspiracy originated as an agreement to that effect entered into between Elmer "Al" Bramlet, former Secretary-Treasurer and leader of Local 226, and the Hanleys, owners and operators of an air conditioning business who entered into various independent contracts with Local 226; indicted Defendant Gramby Hanley physically executed the firebombings in question and, in that regard, obtained various incendiary devices and contacts for more of the same from Defendant Northrup.

Viewing the trial in the light most favorable to the Government, as I must do on a Rule 29(c) motion, the Government presented the following case against Northrup: Gramby Andrew Hanley testified that he obtained various items and devices from Northrup which Hanley thereafter utilized to plant, conceal and detonate or attempt to detonate explosive and incendiary devices at various locations in Las Vegas, Nevada, including the "Alpine Village," "David's Place," the "Starboard Tack," and the "Village Pub." The items and materials obtained from Northrup or with Northrup's assistance and advice included fuse, electric blasting caps, a brass sprayer suitable for spraying flammable substances, low voltage electric speaker wire, "pull-type" friction detonating devices and the components of incendiary detonators. Additionally, Northrup re-introduced Hanley to unindicted co-conspirator Claude Sells, Sells and Hanley having been old acquaintances from high school, so that Sells could assist Hanley in obtaining other explosive and incendiary devices and materials used to assemble, conceal and plant similar devices.

Thomas Radke testified that Northrup introduced him to Gramby Hanley and assisted Hanley in obtaining various kinds of smoke canisters from him. Several of these smoke canisters were recovered from the roof of the Alpine Village after having been planted there by Gramby Hanley.

Additionally, Gramby Hanley testified that he paid Northrup a total of between $80 and $100 for Northrup's assistance.

Two witnesses testified to statements made by Northrup to them regarding Northrup's participation in the aforementioned bombing and arson incidents. Mary Kanelos, Northrup's ex-wife, testified as to the first meeting between the two. Northrup met her in a bar in Las Vegas, subsequent to the Alpine Village and David's Place bombings. Northrup stated to her that he participated in the bombings of both places, and went into some detail about the David's Place bombing. Kanelos testified that Northrup was drunk at the time of the conversation, and that she felt he was boasting to her, out of a desire to impress her because, as Kanelos testified, "she appeared to be the kind of person who would be impressed by such facts."

John Snow testified to similar statements made to him by Northrup with respect to the Alpine Village and David's Place bombings. The statements were made under the following circumstances: Kanelos, who had formerly lived with Snow and had a child by that union, had left Snow to live with Northrup. However, Kanelos continued to keep in contact with Snow and through that contact, Snow learned of Northrup's prior statements to Kanelos. Snow evidently harbored deep emotional feelings for Kanelos, notwithstanding the prior breakup, and in particular harbored an evidently genuine concern for the child due to the implication of Northrup's statements. For that reason, Snow testified, he confronted Northrup and interrogated him about the truth of the prior statements made to Kanelos. While Snow too apparently harbored some doubts about the veracity of the statements at the time, Northrup admitted participating in the bombings, consistently with his prior statements to Kanelos. In particular, he reiterated this very crucial statement previously made to Kanelos: that he had participated in the bombings on behalf of the Culinary Union. At some subsequent point in time, Northrup financed Kanelos' custody struggle with Snow.

To be convicted as a member of an "enterprise conspiracy" under 18 U.S.C. § 1962(d) an individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes. *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978), *reh. denied*, 575 F.2d 300. Additionally, the Government must prove that the activity of the subject enterprise had an effect on interstate commerce to sustain a conviction under § 1962(d); i. e., the Government must show a nexus of the enterprise to interstate or foreign commerce, however minimal. *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979). Finally, to prove a charge of violating § 1962(d), the Government must prove that the defendant in question had knowledge as to the enterprise's illicit activities. *United States v. Diecidue*, 603 F.2d 535, 556, 557 (5th Cir. 1979).[1]

In the case at bar, there is no question but that a nexus existed at all relevant times between the subject enterprise, Culinary Union Local 226, and interstate commerce. Likewise, the testimony of Gramby Andrew Hanley, Claude Sells, and Thomas Radke established beyond a reasonable doubt that Northrup, by his words and ac-

---

1. The Government argues that this Court has given an unduly strict interpretation of the *Diecidue* case. In rebuttal, I can only quote *verbatim* from that case:

    . . . There is no evidence upon which to find that [the accused] knew the enterprisers were engaged in contract murders, a proven purpose of the enterprise, or that dealing in drugs was a part of that enterprise, or that dealing in drugs was a part of that enterprise activity. It is not even contended that [the accused] had any knowledge about the arm-

ed robberies, distribution of counterfeit currency, or stolen Treasury bills [other enterprise activities in that case]. *Without evidence that [the accused] knew something about his codefendants' related activities which made the enterprise, he could not be convicted of conspiring to engage in a pattern of racketeering as defined by the statute. His conviction for the crime charged must be reversed.*

603 F.2d at 556 (emphasis added).

tions, objectively manifested an agreement with Gramby Andrew Hanley to aid and abet him in more than one firebombing, and that these firebombings were connected to the affairs of the subject enterprise.

However, the difficult issue presented by this case is whether the Government has sufficiently proven the final prima facie element of 18 U.S.C § 1962(d) as to Northrup, namely that Northrup had knowledge of the nexus between the firebombings and the affairs of Culinary Union Local 226. The only evidence which the Government presented on this issue was the two admissions made by Northrup to Kanelos and to Snow; in marked contrast, Gramby Andrew Hanley himself testified that he purposely did not tell Northrup of the connection between his activities and the affairs of the Culinary Union. And Northrup was neither a member of the Union nor had contact with any Union officials. Northrup's argument by way of his Rule 29(c) motion is that he stands convicted on one of the prima facie elements of the crime, based upon his uncorroborated admissions to two different persons. He argues that, under the rule of *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954) and *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) his conviction cannot stand, since it rests upon the uncorroborated admissions of the Defendant as to a prima facie element of the Government's case.

■ Defendant Northrup did not make this argument at the time the Court denied his motion for judgment of acquittal under F.R.Cr.P. Rule 29(a). However, I am not aware of any authority which would prevent him from raising the argument for the first time subsequent to his conviction; indeed, it is well settled that disposition of a posttrial motion for a judgment of acquittal is not required to be consistent with a decision on a similar motion before submission of the case to a jury. See *United States v. Brooks*, 349 F.Supp. 168, 170 (S.D.N.Y. 1972); 8 Moore, *Federal Practice*, § 29.05.

■ I must start from the basic blackletter law that an accused cannot be convicted of a crime based upon his own uncorroborated confession of admission; all elements of an offense must be established by independent evidence or corroborated admissions. *United States v. Micieli*, 594 F.2d 102, 108 (5th Cir. 1979); *Lindsay v. United States*, 542 F.2d 755, 756 (8th Cir. 1976); *United States v. Charpentier*, 438 F.2d 721, 724 (10th Cir. 1971). On that basis, Defendant's argument would appear to have prima facie merit.

The Government tenders three arguments, however, in contending that the "corroboration" rule does not apply to these facts. First, the Government argues that the "corroboration rule" of *Smith* and *Opper* applies only to statements made after the commission of the crime; however, Northrup's statements to Snow and Kanelos occurred while the alleged conspiracy was still ongoing. Second, the Government argues that the "corroboration rule" applies only to statements made by the accused to investigating officers and not, as in the case at bar, to friends or acquaintances. Third, the Government argues that the two admissions concerning Northrup's knowledge of the nexus between the firebombings and the affairs of Culinary Union Local 226, made independently of each other and for different reasons, suffice to corroborate one another for purposes of the *Smith-Opper* rule.

■ The third argument is easily disposed of. The Supreme Court has held on several occasions that one admission by the accused, in and of itself uncorroborated, does not by itself corroborate a subsequent and otherwise uncorroborated confession. *United States v. Calderon*, 348 U.S. 160, 165, 75 S.Ct. 186, 188, 99 L.Ed. 202 (1954); *Wong Sun v. United States*, 371 U.S. 471, 489–490 n. 15, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963). The reason for this is clear enough: the rule of *Opper* is that the independent corroborative evidence need not by itself be sufficient to establish the crime or any prima facie element thereof, but need only be sufficient enough to establish the trustworthiness of the admission. 348 U.S. at 93, 75 S.Ct. at 164; and see *United*

States v. Pitman, 475 F.2d 1335, 1336 (9th Cir. 1973), cert. denied, 414 U.S. 873, 94 S.Ct. 146, 38 L.Ed.2d 92 (1974). If two admissions, in and of themselves, are untrustworthy, obviously they cannot be bootstrapped together to raise each other to the level of trustworthiness.

■ The first two arguments, however, require careful consideration. As to the Government's first argument—that the "corroboration rule does not apply to statements made during the course of the crime" —the Ninth Circuit appears to have taken inconsistent positions. In *Buford v. United States*, 272 F.2d 483 (9th Cir. 1959) and in *Ogden v. United States*, 303 F.2d 724 (9th Cir. 1962), the Ninth Circuit held that uncorroborated admissions made during the course of a crime could suffice to convict; the corroboration rule applies only to admissions made after the commission of an offense. 272 F.2d at 486, n. 1; 303 F.2d at 742. More recently, however, the Ninth Circuit stated that the corroboration rule applies only to confessions or admission made in the course of the commission of the offense or in the course of investigation. *United States v. Hallman*, 594 F.2d 198, 201 (9th Cir. 1979).

Even if I were to give the Government the benefit of the doubt, I could not deny Northrup's motion on the basis of the older authority of *Buford* and *Ogden*. *Ogden* and *Buford*, unlike the case at bar, were prosecutions for substantive crimes, and not conspiracy. It makes sense that admissions uttered during the commission of a substantive crime could be trustworthy; indeed, the Federal Rules of Evidence provide that excited utterances and present sense impressions are exceptions to the hearsay rule, for the reason that they are inherently trustworthy statements. See F.R.E. Rule 803(1) and (2), and Notes of Committee on the Judiciary, House Report No. 93–650,

U.S.Code Cong. & Admin.News 1974, p. 7051. However, as in the case at bar, a conspiracy can take place over a course of years, even though the admitting defendant's participation therein may end prematurely; to say that a defendant's statements made after his participation in a conspiracy but during the life of a conspiracy have the same inherent trustworthiness as statements made contemporaneously with the commission of a substantive crime is, in my opinion, to make an artificial comparison. Were I to follow the Government's argument, it would follow that an admission made by a conspirator to a strong-armed police investigator, after the conspirator's participation in the conspiracy but during the life of the conspiracy, would be inherently trustworthy as a matter of law. This would be clearly contra to the intent of the *Smith* holding.

Therefore, since Northrup made his admissions after his participation in the bombings, I hold that said admissions must either be corroborated or fall within some other exception to the *Smith-Opper* rule, notwithstanding the fact that said admissions were also made during the life of the conspiracy.[2]

■ The Government's second argument—that the "corroboration rule does not apply to admissions made to anyone but investigating police officers"—likewise has some support in Ninth Circuit opinions. The Ninth Circuit first noted in dicta in *Bryson v. United States* that the *Smith* case suggests that corroboration may not be required in cases in which admissions are made to one other than an investigating agent. *Bryson v. United States*, 238 F.2d 657, 662 (9th Cir. 1956). Still later, the Ninth Circuit interpreted *Smith* to mean that a statement made by a defendant, not to an official but to an "unwitting accomplice" provides a strong inference of reliability, and therefore is not of the type re-

---

**2.** I am aware that dicta in the Second Circuit case of *United States v. Head*, 546 F.2d 6, 9 (2nd Cir.), cert. denied 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1976) would lead to a contrary result. The *Head* Court suggested therein that an admission made during the course of a conspiracy to coconspirators would

not have to be corroborated. However, the *Head* Court relied specifically upon *Buford v. United States, supra,* for that proposition and, as I have stated before, *Buford* was not a conspiracy case. Accordingly, it is my opinion that the *Head* case is not helpful to the Court's analysis.

quiring independent corroboration. *Kaneshiro v. United States*, 445 F.2d 1266, 1270 (9th Cir. 1971).

In the case at bar, Northrup's admissions concerning his knowledge of the nexus between the subject firebombings and Culinary Union Local 226 were not made either to investigating officers or to "unwitting accomplices," but rather to acquaintances who later turned government's evidence against Northrup. Do these statements provide a strong inference of reliability, such as they do not require corroboration?

Initially, I must state that I do not read the *Smith* opinion as narrowly as do my brethren on the Ninth Circuit. It is true that the Supreme Court held in *Smith* that the corroboration rule is applicable to admissions made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case. 348 U.S. at 155, 75 S.Ct. at 198. However, nowhere in that opinion do I see any indication by the Supreme Court that that is the *only* situation to which the "corroboration rule" applies. The Supreme Court noted that the purpose of the corroboration rule is to prevent errors in convictions based solely upon untrue confessions. 348 U.S. at 152–153, 75 S.Ct. at 197. While the foundation of that rule lies in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused (*Id.*), I do not read that passage so narrowly as to mean only the words of the accused to the police. In fact, language in the *Smith* opinion suggests that it is irrelevant as to whom the admission is made, when that admission constitutes the basis of the Government's case.[3]

Northrup's admissions to Mary Kanelos in the case at bar exemplify my concerns in this regard. At the time he made those statements, he was drunk and obviously was boasting, trying to impress a woman who "appeared to be the kind who would be impressed by such statements." Can we say that these statements, made under these circumstances, are inherently trustworthy and do not require corroboration, merely because they were not made to an investigating police officer? I suggest not.

■ I believe that the only way for me to resolve the 1954 Supreme Court decisions in *Smith* and *Opper* and the subsequent Ninth Circuit opinions in *Bryson* and *Kaneshiro* is to hold that, when an accused makes an admission to someone other than an investigating police officer which the Government heavily relies upon in prosecuting the accused, the Court must look to the circumstances surrounding that admission in order to determine whether it requires corroboration or not.[4]

As I have indicated with respect to Northrup's statements to Kanelos, said statements were not made under circumstances such as to make them inherently trustworthy; rather, corroboration of those statements would be required in order to convict Northrup on charges of 18 U.S.C. § 1962(d).

However, the situation is different with respect to Northrup's statements to Snow. Northrup was not drunk at the time he made those statements. Moreover, Northrup did not seek out Snow in order to "boast" about his alleged participation in the firebombings; rather, Snow confronted Northrup and demanded to be told the truth, for reasons unrelated to police investigation. Moreover, Snow testified that he

**3.** In discussing the issue of whether an accused's statement must be corroborated, or may stand alone as sufficient evidence of guilt, the *Smith* Court stated that "An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.' It is the practical relation of the statement to the Government's case which is crucial, not its theoretical relation to the definition of the offense." 75 S.Ct. at 198–199. However, I hasten to add that I have no power to overrule the Ninth Circuit on this point, but rather, I must follow its precedent.

**4.** It appears that the Ninth Circuit recently arrived at a similar result in the case of *United States v. Leavitt*, 608 F.2d 1290 (9th Cir. 1979).

asked Northrup not "to bullshit" him, and in response Northrup assured Snow that he was telling the truth.

■ In short, there is nothing surrounding the circumstances of Northrup's out-of-court admission to Snow concerning Northrup's knowledge of the connection between Gramby Hanley and the affairs of Culinary Union Local 26 which would suggest that said statements were not inherently trustworthy. Accordingly, and under the rationale of *United States v. Kaneshiro, supra,* I must hold that Northrup's statements to Snow did not have to be corroborated, and the Government could base its proof of the final prima facie element of 18 U.S.C. § 1962 solely upon said admission.

Following the logic of the Court's holding in this case, I would expect Defendant to point out in rebuttal that Snow at all relevant times was vengeful toward Northrup and biased against him, even at the time Northrup made his admissions to Snow. However, that fact would not make the admission any less trustworthy, absent any evidence of coercion by Snow. It could shed light on Snow's motive for testifying against Northrup in this case; however, as I have said in denying Northrup's Rule 29(a) motion, it is not my province on a Rule 29 motion to assess the credibility of witnesses. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *United States v. Nelson,* 419 F.2d 1237 (9th Cir. 1969).

Accordingly, Defendant Northrup's Motion for Judgment of Acquittal pursuant to F.R.Cr.P. Rule 29(c) must be denied.

## II

In the alternative to a Motion for Judgment of Acquittal, Defendant Northrup has entertained a Motion for New Trial pursuant to F.R.Cr.P. Rule 33. He makes two arguments in support of his motion: first, that on a Rule 33 motion the Court has the authority to weigh the credibility of witnesses, and clearly Northrup's convictions are based upon the testimony of two persons, Kanelos and Snow, who were—in Northrup's opinion—thoroughly impeached

at the time of trial; and second, that the Court's striking of the testimony of Thomas Hanley, the Government's chief witness in this case, prejudiced Northrup because, notwithstanding the Court's repeated admonitions to the jury to disregard Thomas Hanley's testimony, Thomas Hanley's testimony was so critical to the Government's case that the jury must have considered it in arriving at the verdict of guilty.

■ Neither argument has merit. As to the first argument, it is well settled that evidence which merely bears on the credibility of a witness, by itself, is an insufficient basis for obtaining a new trial. *United States v. Curry,* 358 F.2d 904, 919 (2nd Cir. 1965), *cert. denied,* 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966); *United States v. Johnson,* 487 F.2d 1278, 1280 (4th Cir. 1973); *United States v. Capaldo,* 276 F.Supp. 986, 992 (D.Conn.1967), *affd.,* 402 F.2d 821 (2nd Cir. 1968). The Ninth Circuit appears to take the position that a court should not grant a new trial simply because it disagreed with the jury as to the witness' credibility, as long as the defendant had a fair opportunity to put the issue before the jury. *Harper v. United States,* 296 F.2d 612, 614 (9th Cir. 1961). In this case, Defendant Northrup had an ample opportunity to argue Kanelos' and Snow's credibility to the jury, and he makes no new and different arguments at this time than he did before the jury. If I were to grant Northrup's Motion on this basis, it would follow that he would be tried again and again until the jury eventually reaches what he believes to be the correct result.

■ As to the second argument, the Court's striking of Thomas Hanley's testimony did not prejudice Northrup. Rather, Thomas Hanley's testimony was primarily directed to the alleged culpability of several of the other Defendants on trial, and with respect to Northrup Thomas Hanley did not add anything of significance to the testimony of Gramby Hanley, Sells, Radke, Kanelos or Snow. Moreover, Northrup and Thomas Hanley had no "special relationship" with each other that inherently

weighed upon Thomas Hanley's credibility, such as was the case with the father-son relationship in *United States v. Demchak*, 545 F.2d 1029, 1031 (5th Cir. 1977). For these reasons, then, Defendant Northrup's heavy reliance upon the *Demchak* case in support of this motion is misplaced.

Accordingly, the Court must deny Defendant Northrup's Motion for New Trial.